## LeFlore v. Sanders.

### No. 413.    Opinion Filed July 13, 1909.

### (103 Pac. 858.)

**ANIMALS—Running at Large—Election.** The act approved May 21, 1908, entitled "An act to regulate and restrain the running at large of domestic animals" (Sess. Laws 1907-08, p. 22, c. 4, art. 2), construed, and **held** to authorize the people of any stock district or county where theretofore stock had not been restrained from running at large under the provisions of sections 1 and 2 of article 1, c. 1, pp. 39, 40, of the Session Laws of 1903, to determine, at an election to be held in the manner provided by Laws 1903, p. 39, c. 1, art. 1, whether all domestic animals shall be permitted to run at large in such stock district or county; and where, at an election held in such stock district, a

majority of the votes cast is in favor of permitting domestic animals to run at large, it is not unlawful thereafter for owners of swine to permit the same to run at large.

(Syllabus by the Court.)

*Error from Atoka County Court; J. H. Linebaugh, Judge.*

Action by Charles Le Flore against B. B. Sanders. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

This is a replevin action, originally brought by plaintiff in error in the county court of Atoka county for the possession of 23 head of hogs. The trial in the lower court was upon an agreed statement of facts, to the court, without a jury. Plaintiff and defendant are both residents of stock district No. 3 of Atoka county, and the hogs in question are the property of the plaintiff. On the 28th day of May, 1908, the board of county commissioners of Atoka county exempted said stock district No. 3 of that county from the provisions of section 1 and 2, art. 1, c. 1, pp. 39, 40, of the Session Laws of Oklahoma of 1903, and permitted all domestic animals to run at large in said district, except jacks and stallions. This act of the county commissioners was taken under the act of the Legislature approved May 21, 1908, entitled "An act to regulate and restrain the running at large of domestic animals." Sess. Laws 1907-08, p. 22, c. 4, art. 2. On the 8th day of June, 1908, the county commissioners, upon petition signed by one-fourth and more of the legal voters of stock district No. 3, called an election in said district for the 11th day of July, 1908, to determine whether or not domestic animals should be restrained or permitted to run at large. At that election 68 votes were cast in favor of the proposition submitted and 12 against. Thereafter plaintiff permitted the hogs in controversy to run at large. On the 12th day of August, 1908, they were trespassing on the premises of defendant, who restrained them, and within 48 hours thereafter notified the plaintiff of the trespass and of the damage he claimed by reason of such trespass, and that plaintiff could have possession of his hogs on the payment of damages sustained

by defendant. Plaintiff refused to pay the damages, and brought this action for possession of the hogs. From the judgment of the trial court, which was against plaintiff, this proceeding in error was brought.

*J. G. Ralls,* for plaintiff in error.

*D. H. Linebaugh,* for defendant in error.

HAYES, J. (after stating the facts as above). This appeal calls for a construction of the act of the Legislature of 1907-08 entitled "An act to regulate and restrain the running at large of domestic animals." (Sess. Laws 1907-08, p. 22, c. 4, art. 2), which we shall hereafter refer to as the act of 1907. At the time of the admission of the state there was in force in the territory of Oklahoma article 1, c. 1, p. 39, of the Session Laws of 1903, providing for a "herd law." Section 1 of said chapter reads as follows:

"Every owner of swine, sheep, goats, stallions or jacks shall restrain them at all times or seasons of the year from running at large in the territory of Oklahoma."

Section 2 of the same act reads:

"All domestic animals other than those mentioned in section 1 hereof shall be by the owner thereof restrained from running at large in said territory unless permitted to run at large as hereafter provided for in this act."

The subsequent sections of that act provide that if one-fourth of the legal voters resident of any stock district shall petition in writing the board of county commissioners of the county in which such stock district is situate, asking that there be submitted to the legal voters of such stock district the question of whether domestic animals shall be permitted to run at large, it shall be the duty of the county commissioners to submit such question to the legal voters of the district at a special election, and, if at that special election a majority of the legal votes cast in such district are in favor of permitting domestic animals to run at large, then such regulation shall take effect in the district 30 days after such special election, and shall continue in force for a period of 3 years.

These provisions of the statute were extended in force in the state by the Schedule to the Constitution and the Enabling Act. Prior to the admission of the state, the eastern part thereof, commonly known as the Indian Territory, was without any "herd law," and in the greater portion of that part of the state all domestic animals were permitted to run at large. The sudden extending of this statute in force in the state found the people in many portions of that part of the state unprepared for its requirements. Under the provisions of sections 1 and 2 of chapter 1 of the Sessions Laws of 1903, *supra*, immediately after the admission of the state, all domestic animals were required to be restrained by the owners thereof from running at large. It is true that under the provisions of that chapter all the domestic animals not mentioned in section 1 might be permitted to run at large if a majority of the voters of any stock district cast their votes therefor at an election for that purpose; but under the statute such animals were required to be restrained until such election could be held. Out of this condition there came a demand on the Legislature from that portion of the state formerly the Indian Terirtory for some relief, and there followed the enactment of the act of 1907. This brief history of the act is given, for the reason that the whole act is crude in its form and the language thereof very ambiguous, and it is necessary, in arriving at the intent of the Legislature, to know something of the purpose sought to be accomplished and the evil the act was intended to remedy.

Section 1 of this act provides that upon the presentation of a written petition, signed by a majority of the legal voters of any county or stock district as shown by the legal votes of such county or district cast September 17, 1907, where stock were not restrained at the time of the adoption of the Constitution, praying that the "herd law" should be suspended as to such county or district "until such time as the same shall be submitted to the people of the county or district as provided for under the laws of Oklahoma," the board of county commissioners shall be authorized to exempt such county or district from the provisions of sections

1 and 2, c. 1, art. 1, *supra,* of the Session Laws of 1903. Section 2 of the act provides that upon the presentation of such petition to the commissioners of any county showing a majority of the legal voters of such county or district as cast at the last election, the county commissioners shall order the suspension of said stock law "until such time as the people may vote on the same as provided by law." Sections 3 and 4 authorize the county commissioners, when they avail themselves of the act and exempt the county or any portion thereof from its operation, to provide by their written decision or order what domestic animals may run at large, and the commissioners are authorized to permit all the domestic animals embraced in section 2 of the act of 1903 and all the animals embraced in section 1 of said act except jacks and stallions to run at large in the county until such time as the people vote upon said stock law as provided by law.

The language of the act clearly authorizes the county commissioners to suspend the herd law as to any or all the animals mentioned in either of said sections of the act of 1903, except the two classes named. The confusion in the act arises from the use of language in section 1 thereof authorizing the county commissioners to suspend the herd law "until such time as the same may be submitted to the people as provided for under the laws of Oklahoma," and from the use of similar language in section 2. Under the law as in force in the territory of Oklahoma, all domestic animals enumerated in section 1 of the act of 1903 had to be restrained at all times by the owners, and the owners could not be relieved from the operation of the provision of said section by the majority vote at an election, as they could as to the provisions of section 2. But the act of 1907 authorized the suspension of both of these sections "until the same may be voted upon as provided by law." It is the contention of defendant in error that the effect of this act is that it authorizes the board of county commissioners to suspend both sections, thereby relieving the people in that portion of the state which was unprepared for

this law from the operation thereof until they voted upon whether or not section 2 should be permanently suspended, but that when an election occurred as to section 2 regardless of the vote cast at such election section 1 thereupon immediately became operative again and under its provisions the owner of swine was required to restrain them at all times. This construction of the statute in our opinion leads to an absurdity, and should be avoided if it is susceptible of another construction that does not lead to such result. *Lee v. Roberts*, 3 Okla. 106, 41 Pac. 595. Under such construction a majority of the people by petition can obtain from the board of county commissioners an order suspending section 1. Twenty-five per cent. of the voters may immediately thereafter by petition require an election to be called and held, by reason of which act section 1 becomes operative, and the animals enumerated therein are required to be restrained, although the other 75 per cent. of the voters may be opposed to the election and the proposition submitted thereat.

We do not think that such was the legislative intent, but that it was intended to authorize the board of county commissioners to suspend the provisions of both sections of this act temporarily until the voters of any district or county should have an opportunity to vote upon the question of whether or not domestic animals included in both sections should be permitted to run at large, and that such election should be held under the provision of the law theretofore in force in the territory for holding elections as to section 2. Throughout the act of 1907, sections 1 and 2 of the act of 1903 are treated together, and whenever one is referred to the other is referred to also. It is true that nowhere in the act of 1907 is it stated in specific terms that it may be determined by an election whether the domestic animals included in section 1 may be permitted to run at large, as is provided in the act of 1903 for determining whether the domestic animals included in section 2 shall be permitted to run at large; but the cardinal rule in the construction of statutes is that the legislative intent must govern, and to arrive at the legislative intent the entire act must

be considered, together with all other acts and enactments upon the same subject, and when the intention of the Legislature can be gathered from the entire statute, words may be modified, altered, or supplied to give the statute the force and effect which the Legislature intended. *Territory v. Clark,* 2 Okla. 82, 35 Pac. 882. The language of sections 1 and 2 of the act under consideration provides that the commissioners may suspend both sections of the act of 1903 upon petition made therefor until the same are voted upon as provided by law, indicating, we think, that it was the intention of the Legislature that both sections of the act of 1903 should be treated alike, and that the people of that part of the state in which before no "herd law" had been in operation should be relieved from the requirement thereof until they could determine by an expression by ballot at an election whether domestic animals should be restrained as provided by said statute. As previously stated, any other construction leads to an absurdity, and courts will avoid a construction of a statute that leads to such result. *Lee v. Roberts, supra.*

The county commissioners of stock district No. 3 of Atoka county, upon petition having been filed with them, suspended sections 1 and 2 of the act of 1903, and by their written decision provided that all domestic animals except jacks and stallions should be permitted to run at large. Subsequently an election was held as provided by law at which the question whether domestic animals should be permitted to run at large was submitted to the voters of the district. At that election 68 votes were cast in favor of permitting domestic animals to run at large and 12 votes against, the result of which was, in our opinion, to established the right of owners to permit all domestic animals to run at large in that district, and the judgment of the trial court should have been for plaintiff.

The judgment of the lower court is therefore reversed, and the cause remanded.

All the Justices concur.