## ALLEN v. WALDEN.

No. 1046.     Opinion Filed September 13, 1910.

(111 Pac. 316.)

1.     ANIMALS—Running at Large—Territorial Statutes—Extension to State. Article 1 of chapter 1 of the Session Laws of the Territory of Oklahoma of 1903 was extended in force in the state upon its admission into the Union; and by section 1 thereof every owner of swine in the state was required to restrain them at all times and seasons of the year from running at large.

2.     ANIMALS—Running at Large—Construction of Statutes. By sections 1, 2, and 3 of an act of the Legislature approved May 21, 1908, entitled "An act to regulate and restrain the running at large of domestic animals" (Sess. Laws 1907-08. p. 22, c. 4, art. 2), the board of county commissioners of any county of the state where stock were not restrained at the time of the adoption of the Constitution are authorized to exempt their county or any stock district thereof from the provisions of said section 1 of the act of 1903, upon the presentation, after the approval of said act, of a written petition signed by a majority of the legal voters of such county or district as shown by the legal votes of such county or district cast at the election held in September, 1907.

3.     SAME—Exemption from Operation of Statute—Validity. An order exempting certain portions of a county from the operation

of said law made by a board of county commissioners without a petition having been filed therefor subsequent to the passage and approval of the act of May 21, 1908 (Sess. Laws 1907-08, c. 4), is void.

4. **SAME—Procedure.** Where it is desired to exempt certain localities of a county from the operation of said law, the proper procedure is to first have the county divided into stock districts as is provided by section 3 of the act of 1903 (Sess. Laws 1903, c. 1), and thereupon to file a petition of the legal voters of such district as is provided by section 1 of the act of May 21, 1908 (Sess. Laws 1907-08, c. 4).

(Syllabus by the Court.)

*Error from Cherokee County Court; J. T. Parks, Judge.*

Action by Sherman Walden against Tom Allen. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

*Bruce L. Keenan,* for plaintiff in error.

*J. D. Cox,* for defendant in error.

HAYES, J. This is an action in replevin brought originally by defendant in error against plaintiff in error to recover the possession of one hog. There is no controversy about the facts. Both parties to the action are residents of Cherokee county. Cherokee county lies in that portion of the state which, before the admission of the state, constituted the Indian Territory. Defendant in error, who is admitted to be the owner of the hog, permitted it to run at large, and it trespassed upon the premises of plaintiff in error, who distrained and held it pending the payment by defendant in error of the damages it had committed on the premises of plaintiff in error. Plaintiff in error made the distraint and had his damages assessed in accordance with the procedure prescribed by sections 11 to 15, inclusive, of the act of the Territorial Legislature approved February 27, 1903 (Sess. Laws 1903, p. 39, c. 1), hereafter referred to as the act of 1903; but defendant in error refused to pay the damages assessed, and brought this action to recover possession of his hog. The judgment of the lower court was in his favor. A determination of the rights of the parties to this action involves the construction and application of the statute to regulate and restrain the running at large of domestic

animals extended in force to the state upon its admission, as amended by a subsequent enactment of the State Legislature. Section 1 of the act of 1903 provides:

"Every owner of swine, sheep, goats, stallions or jacks, shall restrain them at all times and seasons of the year, fom running at large, in the Territory of Oklahoma."

Section 2 of the same act reads:

"All domestic animals other than those mentioned in section one hereof, shall be, by the owner thereof, restrained from running at large in said territory, unless permitted to run at large as hereafter provided in this act."

Sections 3 to 10, inclusive, provide for the calling and holding of elections in stock districts to determine whether any of the animals included in section 2 shall be exempted from the operation of said section, and be permitted to run at large. Section 38 provides that section 2 shall not apply to any portion of the territory lying west of the one hundredth meridian, west longitude, except upon the condition thereafter provided in said section. There is no provision in the act whereby the law may in any portion of the territory be suspended as to swine, sheep, goats, or any of the other animals named in section 1. The provisions of this statute were extended in force in the state by the Schedule to the Constitution and the Enabling Act. *Le Flore v. Sanders*, 24 Okla. 301, 103 Pac. 858. Prior to the admission of the state, the eastern part thereof, commonly known as the Indian Territory, was without any herd law; and, as was said in *Le Flore v. Sanders, supra*, the sudden extending of the foregoing statute in force in the state found the people in that part of the state unprepared for its requirements, and the public demands for relief resulted in the passage at the first State Legislature of an act entitled, "An act to regulate and restrain the running at large of domestic animals." Sess. Laws 1907-08, p. 22, c. 4. The first section of this act authorizes the county commissioners of any county of the state where stock were not restrained at the time of the adoption of the Constitution to exempt such counties or any district thereof from the provisions of sections 1 and 2 of the act of the Terri-

torial Legislature of 1903, *supra*, upon the presentation of a written petition signed by a majority of the legal voters of such county or district as cast at the state election held September 17, 1907. Section 2 authorizes and directs the county commissioners of any such county, upon the presentation of such petition, to make an order suspending the stock law until such time as the people may vote on same as provided by law. Section 3 authorizes the county commissioners, when they act under the provisions of section 1, to provide whether any or all the animals enumerated in the section may run at large. These sections of the act were considered by this court in *Le Flore v. Sanders, supra*, where it was held that the act clearly authorizes the county commissioners to suspend sections 1 and 2 of the act of 1903 as to any or all the animals mentioned in either of said sections of the act of 1903, except the two classes named, to wit, jacks and stallions, until such time as the question whether all domestic animals shall be permitted to run at large is submitted at an election to be held in the manner provided by the territorial act of 1903.

In the case at bar the residents of that portion of Cherokee county in which the parties to this action reside prior to the 4th day of February, 1908, presented a petition, containing a majority of the electors within the townships therein named, to the board of county commissioners of that county, praying that the domestic animals in said townships be permitted to run at large. On February 4, 1908, the board of county commissioners acted upon said petition and ordered that hogs should be kept in inclosures after March 1, 1908, and that all other stock, except jacks and stallions, should be allowed to run at large. The act of the first state Legislature, authorizing the county commissioners of certain counties to exempt their county or districts therein from the operation of the herd law, did not become effective until May 21, 1908, and at the time the board of county commissioners made the foregoing order there was no statute authorizing them to do so. A second order was made by the board of county commissioners on the 9th day of April, 1909, whereby all stock except jacks and stallions were

permitted to run at large in the townships embraced in the for-
mer order. This order of the commissioners was made subsequent
to the time the act of the state Legislature became effective, but
it was made without any petition having been filed therefor. It
purports to have been made upon the petition formerly filed upon
which the order of February 4, 1908, was made, but that petition
was not authorized by any statute, and was obtained and filed
and acted upon by the board of county commissioners prior to the
enactment of any law authorizing same or vesting the county com-
missioners with power to suspend in any manner the herd law, ex-
cept by an election as provided by the territorial act of 1903;
and the entire proceedings of the commissioners, including the
order of April 9, 1909, are void.          ,.

Since section 1 of the act of 1903 was extended in force in
the state upon its admission and continued operative therein until
suspended  in the manner provided by the act of the first state
Legislature, and since no valid order of the board of county com-
missioners has been made suspending said section, defendant in
error's hog was unlawfully running at large when restrained by
plaintiff in error, and plaintiff in error was entitled to hold same
until his damages were paid or the hog sold under the provisions
of the statute for the payment of said damages.

The importance of this question to the residents of the east-
ern part of the state and the facts of this case will justify us in
making a further suggestion relative to the procedure by the citi-
zens of a district or a county and by a board of county commis-
sioners to suspend the herd law. Section 1 of the act of 1908
authorizes the stock of any county or any district therein to be
exempted from the provisions of sections 1 and 2 of the act of
1903. It will be noted that the territory over which the county
commissioners of any county may suspend the law is the entire
county or any stock district. Section 3 of the act of 1903 makes it
the duty of the board of county commissioners of any county, when
a petition in writing, signed by 25 homesteaders or freeholders,
legal voters, and residents of the county, is presented to them at

regular session, to divide the county into stock districts. Such stock districts shall embrace not less than 72 square miles nor more than 144 square miles, and be in compact form. It does not appear in the case at bar that Cherokee county has ever been divided into districts, and the petitions filed with the board of county commissioners were not from the voters of any stock district, but consisted of two petitions, one embracing the residents of two townships, and the second petition embracing the residents of another township, who asked that they be adjoined with the two townships that had theretofore petitioned. The proper procedure under the statute would be to file with the board of county commissioners, first, a petition in writing, signed by 25 homesteaders or freeholders, legal voters and residents of the county, asking for a division of the county into stock districts. After such division is made, then a petition from a majority of the voters of any such district, as shown by the votes cast at the election on September 17, 1907, filed with the county commissioners, would authorize the county commissioners to exempt such stock district from the provisions of the law until such time as an election is held in said district, whereat it is determined that the law shall be in force and effect therein.

The judgment of the trial court is reversed, and the cause remanded.

All the Justices concur.