TRUSTEES', EXECUTORS' & SECURITIES INS. CORP., *Limited, et al.* v. HOOTON, *County Clerk.*

No. 7006.    Opinion Filed December 14, 1915.

Rehearing Denied May 2, 1916.

(157 Pac. 293.)

1.  **TAXATION—Municipal Corporations—Constitutional Provisions —Uniformity—Municipal Purposes.** The act of July 12, 1913 (chapter 246, Sess. Laws 1913, p. 684), as amended March 11, 1915 (chapter 105, Sess. Laws 1915, p. 167), levies a registration tax upon the privilege of recording the instruments therein specified, and is constitutional and valid.

    (a)   Said act does not contravene section 8, art 10, Williams' Annotated Constitution, requiring that all property which may be taxed **ad valorem** shall be assessed for taxation at its fair cash value.

    (b)   Nor does said act violate section 5, art. 10, Williams' Annotated Constitution, which requires that taxes shall be uniform upon the same class of subjects.

    (c)   Section 20, art. 10, Williams' Annotated Constitution, providing that the Legislature shall not impose taxes for the purposes of any county, city, town, or other municipal corporation, etc., does not apply to the tax imposed by this act.

2.  **STATUTES—Construction—Supplying Omissions.** Where the plain intent and meaning of the Legislature can be gathered from the context of a statute, in order to give effect to such intention the court, in construing such statute, may substitute or supply a necessary and proper word to attain this result.

3. **CONSTITUTIONAL LAW—Privileges and Immunities—Equal Protection of Law—Registration Tax.** Said act is not in violation of section 2, art. 4, nor of the Fourteenth Amendment of the Constitution of the United States.

4. **MANDAMUS—Subjects of Relief—Acts of Officers.** Mandamus will not lie to compel a county clerk to record a mortgage upon real estate without the payment of the tax imposed by said act.

(Syllabus by the Court.)

*Error from District Court, Dewey County;*
*G. A. Brown, Judge.*

Application by the Trustees', Executors' & Securities Insurance Corporation, Limited, and another, as trustees, for writ of mandamus to J. E. Hooton, County Clerk of Dewey County. Judgment for defendant, and plaintiff brings error. Affirmed.

*Geo. E. Black* and *W. A. Sipe, Jr.,* for plaintiffs in error.

*S. P. Freeling,* Attorney General, and *J. H. Miley,* Assistant Attorney General, for defendant in error.

HARDY, J. Plaintiffs in error, as plaintiffs below, applied to the district court of Dewey county for a writ of mandamus to the defendant in error as register of deeds of the county named, requiring him to record a mortgage to plaintiffs, and from a judgment refusing the writ this appeal is prosecuted. On January 4, 1915, pending this appeal, defendant's term of office as register of deeds expired, and as county clerk he succeeded himself, and upon suggestion of this fact by stipulation the proceedings were amended to conform therewith.

Plaintiffs allege that on the 15th day of July, 1914, the Kansas City, Mexico & Orient Railroad Company executed and delivered to plaintiffs a mortgage upon all of its railroad and other property in this state as security for

the payment of $31,000,000 par value of its gold bonds, dated July 15, 1914, and payable July 1, 1964, said bonds being issued as security for the payment of $6,000,000 in promissory notes, all of the proceeds of which were used by it to purchase said railroad, and for the further purpose of raising money from the sale of said bonds to be used in the construction, improving, and erection of property of said company in the counties of this state which would be subject to an *ad valorem* tax in the counties where situated, and that said mortgage is owned and held by nonresidents of the State of Oklahoma. On the 12th day of November, 1914, plaintiffs tendered said mortgage to defendant as register of deeds of Dewey county, to be recorded, together with the usual fees for recording other than that required by the act in question. Defendant refused to record said mortgage without payment to the county treasurer of Dewey county for the use of the counties entitled thereto the sum of 50 cents for each $100 of that portion of said mortgage which the value of said property in Oklahoma bears to the total value of said mortgaged property, as determined by the act; and plaintiffs, declining to pay this amount, brought this suit.

It is not questioned by defendant that mandamus is the proper remedy in the present case if plaintiffs are entitled to have such mortgage recorded as prayed. The question presented for our consideration is whether the act of July 12, 1913, being chapter 246, Sess. Laws 1913, p. 684, together with the amendment thereto of March 11, 1915, being chapter 105, Sess. Laws 1915, p. 167, is valid and constitutional. Section 1 of said act defines what instruments shall be embraced within the meaning of the term "real estate mortgage"; section 2 exempts all mortgages taxed by the act from *ad valorem* and all other tax-

ation by the state or any local subdivision thereof, except
that income taxes which may be payable in whole or in
part from the interest received from such mortgage in-
debtedness are not affected; section 3 provides that no
instrument affected by the act shall be exempt from the
tax imposed thereby by reason of anything contained in
any other statute or by reason of nonresidence within the
state, or for any other cause; section 4 prescribes the rate
of taxation; section 5 authorizes the owner of any mort-
gage filed prior to July 1, 1913, to take the benefits of said
act by complying therewith; section 6 relates to the record-
ing of supplemental instruments or mortgages; section 7
makes provision for mortgages where the amount thereof
is indefinite, or given to secure contract obligations; sec-
tion 8 prescribes the payment of said taxes as a prerequi-
site to recording the said instrument, to its use as evidence,
and prohibits judgment or final order for the foreclosure
and enforcement of any mortgage subject to the tax im-
posed or of any debt or obligation secured by or which se-
cures any such mortgage, unless the tax imposed has been
paid as provided; section 9 governs the payment of taxes
in cases of mortgages made by corporations in trust to se-
cure bonds or obligations issued or to be issued thereafter;
section 10 regulates the apportionment of the amount of
taxes to be paid where the property covered by the mort-
gage is situated in more than one county, and where the
property is located partly within this state and partly
without the state; section 11 regulates the payment to and
distribution of taxes by the county treasurer; section 12
makes provision for advances on old mortgages, and fur-
ther provides that all mortgages upon which the special
tax is not paid shall be taxable under existing laws; and

section 13 repeals all acts and parts of acts in conflict therewith.

The first objection to the validity of the act is that it is in violation of section 8 of article 10 of the Constitution of Oklahoma, which provides that:

"Property which may be taxed *ad valorem* shall be assessed for taxation at its fair cash value, estimated at the price it would bring at a fair voluntary sale."

In support of this objection it is argued that the tax imposed by the act under consideration is a tax upon property, and therefore the tax levied is an *ad valorem* tax, and subject to the limitations imposed by section 8 of article 10 of the Constitution. A considerable portion of the briefs of counsel for both sides are devoted to a discussion of this question. The statement is made by the Supreme Court of Kansas in the case of *Wheeler v. Weightman*, 96 Kan. 50, 149 Pac. 977, L. R. A. 1916A, 846, that in twenty-eight states of the Union real estate mortgages are taxed as personal property, while in six states they are taxed as an interest in real estate, and in five states a so-called registry tax is imposed which takes the place of all other taxes, and in this last class the court includes the States of Alabama, Michigan, Minnesota, New York, and Oklahoma; while in nine states such mortgages are exempt from any species of taxation.

It would serve no useful purpose to go into an extended review of the history of legislation seeking to impose a tax of this character. The reason for such taxation is well stated in *Union Trust Co. v. Detroit Common Council*, 170 Mich. 692, 137 N. W. 122, as follows:

"The history of the adoption of this act is a matter of common knowledge. It is well claimed by relator that

mortgages and like instruments had been concealed from assessing officers by putting them in the names of non-residents, withholding them from record, and other familiar means, and it was urged that, if a special tax could be imposed upon these instruments when they were recorded, and therefore foreclosure made dependent upon their having been recorded, and the tax made sufficiently low in amount, there would be an inducement to disclose mortgages to the assessing officers rather than to hide them as theretofore. With this end in view, the act was passed."

An additional reason sometimes given for the passage of legislation of this character is that by exempting mortgages from ordinary *ad valorem* taxes and placing this smaller tax in lieu of all other taxes capital would be attracted to the state and would be induced to invest in securities of this nature. It will be noted that the title of the act itself is "An act providing for exemption from *ad valorem* taxes of mortgages on real estate and the indebtedness thereby secured; the payment of a registration tax when filing a mortgage for record," etc., and by section 2 it appears that all mortgages upon real property within the state covered by this act and the debts and obligations secured thereby are exempted from *ad valorem* and all other taxes. It is thus seen that the Legislature has itself denominated the tax a registration tax, and has imposed the same in lieu of *ad valorem* and all other taxes. The authority of the Legislature to do so is contained in section 12, art. 10, of the Constitution (section 277, Williams' Ann.), which expressly authorizes the Legislature to provide for the levy and collection of a registration and other specific taxes. Being a special tax upon the privilege of registration, and not levied as an *ad valorem* tax in the manner that such taxes are usually levied,

as provided by section 7374, Rev. Laws 1910, which are levied annually, the constitutional provision in question could have no application thereto, nor impose any limitation upon the power of the Legislature in reference to the levy and collection of such tax.

Much reliance is placed by plaintiffs upon the decision of the Supreme Court of Kansas in *Wheeler v. Weightman, supra,* where that court construed the mortgage tax law of that state to be a tax upon property, and declared the same unconstitutional as being in contravention of section 1 of article 11 of the Constitution of that state, which required a uniform and equal rate of assessment and taxation, and in which the court referred to the mortgage tax law of this state as a tax upon property. It was stated in the opinion that no constitutional impediment such as vitiated the Kansas law stood in the way of enacting the law of this state, and in Michigan and New York, where similar statutes are in force, and that in Minnesota the Constitution had been amended to eliminate a provision similar to the equality and uniformity clause in the Constitution of Kansas; while a similar amendment submitted for adoption in Kansas had been rejected by the people, and the holding of the court was placed upon these constitutional restrictions, which that court expressly recognized did not exist in the other states named. While that court referred to the tax in this state as a tax on property, in other states where a somewhat similar law is in force the courts—for instance, in New York, Minnesota, Michigan, Virginia, and Alabama—have referred to the taxes imposed by the laws in those states as excise, registration, or privilege taxes. We think these references by the courts to the laws of their respective states are correct and that the

tax imposed by the act in question is of a similar nature and may properly be denominated, as it has been by the Legislature, a registration tax; the statute of this state being in many respects similar to the New York, Michigan, Minnesota, and Alabama statutes.

It is further urged that said act is in conflict with section 5 of article 10 of the Constitution, which declares: "Taxes shall be uniform upon the same class of subjects." If we concede that this provision of the Constitution applies to taxes of this character, we think the objection is not well taken, because, in our judgment, the taxes imposed for registration of the instruments therein specified are uniform upon the various classes designated, and therefore the act is not subject to the objection urged.

The tax required for registration of the instruments enumerated in section 4 of the original act was 50 cents for each $100 or major fraction thereof, where such mortgage was for five years or more, 30 cents for each $100 or fraction thereof where said mortgage was for less than five years and for three years or more, and, where the same was for less than three years, 20 cents for each $100 of the principal debt or obligation secured thereby. The amendment of 1915 exacts a tax of ten cents for each $100, and each remaining major fraction thereof, where such mortgage is for five years or more; eight cents for each $100 where such mortgage is for four years and less than five years; six cents for each $100 where such mortgage is for three years and less than four years; four cents for each $100 where such mortgage is for two years and less than three years, and two cents for each $100 where such mortgage is for less

than two years, and, if the amount secured by said mortgage is less than $100, a tax of ten cents is imposed. It is admitted that a classification according to the amount of indebtedness secured by the mortgage may be made by the Legislature, as has been done; and, this being true, we see no good reason why an additional classification may not be made, based upon the time for which the indebtedness secured by said mortgage is to run; in other words, regulating this additional classification by the date of maturity of the obligation secured. The act does not make the tax exacted a lien upon the mortgage affected thereby, or upon the property embraced therein, or upon the debt or obligation which it secures, nor is any procedure provided by which same may be collected, other than denying the owner the benefits of the registration laws of the state, and denying him relief in the courts upon the instruments not recorded. The benefits to be obtained by a registration under the act are that such instrument, when so recorded, shall be notice to all the world of the rights of the mortgagee therein, and such mortgagee is entitled to maintain an action in the courts of this state for the foreclosure of said instrument, and to an exemption from *ad valorem* and all other taxation by the state and all of its subdivisions. If a mortgage for $1,000 maturing one year after date is recorded, and a mortgage for $1,000,000 maturing fifty years after date is also recorded, the clerical work necessary to record the instruments may be the same in each instance; yet the tax would be different. And under the law the mortgage maturing in fifty years would entitle the owner thereof to said benefits and exemptions during the life of said mortgage; while the benefits and exemptions in the other case would be

for a much less period. The effect of this will be readily seen, if the state, instead of granting this exemption, should do as did the State of Oregon, and other states, viz., declare the mortgage of real estate to be real property, and should tax it as such. The difference between such tax and the exaction for registration, which is nominal as compared to the amount of taxes that would be paid upon an *ad valorem* basis, shows at once the value of the benefits and privileges which the act accords and the exemptions which it grants. These differences certainly justify the classification complained of. Section 2302, Gen. Stat. Minn. 1913, imposed a registration tax of 15 cents upon each $100 or fraction thereof where the debt secured matured within less than five years, and, where said indebtedness matured more than five years from the date of such instrument, a tax of 25 cents on each $100 or fraction thereof was required. The power of the Legislature to distinguish, select, and classify objects of taxation has a wide range of discretion, and, while the classification must be reasonable, and not arbitrary, there is no precise application of the rule of reasonableness, and there cannot be an exact exclusion or inclusion of persons or things. The question is, when a classification has been made, whether there is any reasonable ground for it, or whether it is only simply arbitrary, based upon no real distinction and entirely unnatural. If the classification be proper and legal, then there is the requisite uniformity in that respect. This right is expressly recognized in section 22 of article 10 of the Constitution, and is sustained by the following authorities: 1 Cooley on Taxation (3d Ed.) p. 79, and note; *German Alliance Ins. Co. v. Lewis,* 233 U. S. 389, 34 Sup. Ct. 612, 58 L. Ed. 1011, L. R. A. 1915C, 1189; *Nicol v. Ames,* 173 U. S.

509, 19 Sup. Ct. 522, 43 L. Ed. 786; *Magoun v. Ill. Trust & Sav. Bank,* 170 U. S. 283, 18 Sup. Ct. 594, 42 L. Ed. 1037; *Pocahontas Consol. Coll. Co. v. Com.,* 113 Va. 108, 73 S. E. 446.

We think there is such a difference in the different classes of instruments affected by the act as to justify the Legislature in prescribing a different rate therefor, and that it cannot be said that such classification is arbitrary and without such distinction as to render same beyond power of the Legislature to make. However, we do not think the section of the Constitution invoked applies to taxes of this character, because it is a tax upon the privilege of registering the instruments enumerated upon the terms prescribed by the statute, payable upon the mortgagee availing himself of the benefits of the registration laws' of this state and the exemptions granted under this act. *Pocahontas Consol. Coll. Co. v. Com., supra;* 18 Op. Atty. Gen. 491; *State v. Topeka,* 36 Kan. 76, 12 Pac. 310, 59 Am. Rep. 529; *People v. Trust Co. of America,* 205 N. Y. 74, 98 N. E. 207; *Saville v. Valley Ry. & Power Co.,* 114 Va. 444, 76 S. E. 954; *Orr v. Sutton,* 119 Minn. 193, 137 N. W. 973, 42 L. R. A. (N. S.) 146; *People ex rel. Bowen v. Moeller,* 171 Mich. 547, 137 N. W. 245; *State v. Ala. Fuel & Iron Co.,* 188 Ala. 487, 66 South. 169, L. R. A. 1915A, p. 185. Being, then, a tax upon a civil privilege, the authorities cited by plaintiffs do not apply.

A similar question was determined by this court in *McGannon, Adm'r, v. State ex rel. Trapp,* 33 Okla. 145, 124 Pac. 1063, Ann. Cas. 1914B, 620, where the court was construing the act of May 26, 1908 (Laws 1907-08, c. 81, art. 11), which imposed a tax upon inheritances,

and it was there held that such tax was not a tax upon property, but upon the transitus of property, and therefore was not in conflict with section 5 of article 10 of the Constitution.

It is urged with a great deal of vigor that under the original act mortgages for more than three years and less than five years were not subject to the tax, and that both the original and the amended acts expressly exempted from their operation supplemental mortgages attaching the lien of the original mortgage to property not covered by it, without increasing the indebtedness secured, and also exempted mortgages by any domestic transportation, transmission, or industrial corporation to secure an issue of bonds where the proceeds thereof were to be used in the construction or improvement of property that would be subject to an *ad valorem* tax in this state. The language of section 4 of the original act is that:

"A tax of fifty cents for each one hundred dollars and each remaining major fraction thereof where such mortgage is for five years or more; and thirty cents for each one hundred dollars where such mortgage is for less than five years and not more than three years, and when the same is for less than three years, twenty cents for each one hundred dollars of the principal debt or obligation. * * *"

A literal interpretation of the language quoted would seem to indicate that mortgages for three years or more and less than five years were not included within its terms. It is apparent that the Legislature intended to impose a tax for the registration of this class of mortgages of 30 cents for each $100 secured thereby, because a different rate is imposed for mortgages for five years or more, and a rate of 20 cents for each $100 where

the mortgage is for less than three years. The intention of the Legislature being apparent and easily gathered from the context, the inquiry then arises: What is the duty of the court in the premises? It has been stated by an eminent writer that:

"Legislative enactments are no more than any other writing to be defeated on account of mistakes, errors or omissions, provided the intention of the Legislature can be collected from the whole statute. * * * Where one word has been erroneously used for another, or a word omitted, and the context affords the means of correction, the proper word will be deemed substituted or supplied. This is but making the strict letter of the statute yield to the obvious intent." (2 Sutherland Stat. Const., section 410, p. 795, and authorities cited.)

In 36 Cyc., page 1109, in discussing the duty of the court in the construction of statutes, it is said:

"Closely allied to the doctrine of the equitable construction of statutes and in pursuance of the general object of enforcing the intention of the Legislature is the rule that the spirit of reason of the law will prevail over its letter. Especially is this rule applicable where the literal meaning is absurd, though the effect is to make portions of the statute entirely inoperative." *Territory v. Clark,* 2 Okla. 82, 35 Pac. 882; *Stiles v. Guthrie,* 3 Okla. 26, 41 Pac. 383; *Le Flore v. Sanders,* 24 Okla. 301, 103 Pac. 858; *State v. Hooker,* 26 Okla. 460, 109 Pac. 527.

It is apparent from a reading of the act of 1913 that the intention was to classify mortgages into three classes as follows: (1) Where such mortgage is for five years or more; (2) where such mortgage is for three years or more and less than five years; and (3) where such mortgage is for less than three years. The act of 1913 may be given this construction without doing violence to the language thereof, and without violating any

approved canon of construction.  The amendment of 1915 is not open to this objection, but it is assailed because it is said that the act as so amended imposes no tax upon the registration of any mortgage where the amount is over $100.  There is no merit in this contention.  It is also said that the act is in conflict with section 51, art. 5, of the Constitution of this state, providing that:

"The Legislature shall pass no law granting to any association, corporation, or individual, any exclusive rights, privileges, or immunities within this state."

In a note to this section in Williams' Annotated Constitution it is stated that ·this section was incorporated to prevent any exclusive franchise or privilege being granted by the Legislature in this state.  The legislation involved is not of this character.

It is also urged that the act is in conflict with section 2 of article 4 of the Constitution of the United States, providing:

· "Citizens of each state shall be entitled to all privileges and immunities of citizens in the several states."

—and with the Fourteenth Amendment thereto, providing:

"No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States;  *  *  *  nor deny to any person within its jurisdiction the equal protection of the laws."

Under this objection it is claimed that the exemption in favor of mortgages by domestic transportation, transmission, and industrial corporations is a right or immunity to such corporations which is denied to individuals or partnerships, and also to nonresident owners of mortgages, where the proceeds of the bonds secured were to be used in acquiring or improving property subject to

an *ad valorem* tax, whether such nonresident be an individual, firm, or corporation. Under section 9 plaintiffs would not be required to pay the tax based on the amount of said mortgage not actually advanced until the amount thereof had been advanced. This section does not exempt such corporations from the payment of said tax, but prescribes a different rate for such corporations where the property acquired by the proceeds of said bonds would be subject to an *ad valorem* tax. Without determining whether this contention be true or not, as it will be time enough to decide this question when a proper case is presented to the court, it is sufficient to say that, though such be the effect of this provision, it will not have the effect of rendering the entire act void, but it may be stricken out, leaving ample provision remaining for the exaction of said tax and the collection thereof. Statutes having reference to taxation are subject to the same rule as are other statutes, which is that the court is not warranted in declaring the whole statute void unless all the provisions are connected in subject-matter, depend on each other, were designed to operate for the same purpose, or which otherwise are so dependent in meaning that it cannot presume that the Legislature would have passed one without the other; and this is true even though the valid and invalid provisions may be expressed in the same section, or even in the same sentence; yet, where they are distinct and separable, the valid may be sustained and the invalid stricken out. 1 Sutherland Stat. Const., section 296, p. 576; *People v. McCreery,* 34 Cal. 432; *Bank v. Memphis,* 116 Tenn. 642, 94 S. W. 606; *Fox's Appeal,* 112 Pa. 337, 4 Atl. 149; *In re County Comm. 7th Jud. Dist.,* 22 Okla. 435, 98 Pac. 557; *Ex parte Anderson,* 33 Okla. 216, 124 Pac. 980; *Pioneer Tel. & Tel. Co. v. State,*

40 Okla. 417, 138 Pac. 1033. So, whether this section be valid or not, there is enough of the act remaining to require the payment of this tax by persons presenting instruments for record. It is also claimed that the act is in conflict with section 20 of article ·10 of the Constitution of this state, which provides:

"The Legislature shall not impose taxes for the purpose of any county, city, town, or other municipal corporation, but may, by general laws, confer on the proper authorities thereof respectively the power to assess and collect such taxes."

This section of the Constitution was considered by the court in *Thurston, County Treas., v. Caldwell,* 40 Okla. 206, 137 Pac. 683, and the court said:

"Section 20, art. 10, Williams' Annotated Constitution of Oklahoma, which provides, 'The Legislature shall not impose taxes for the purpose of any county, city, town, or other municipal corporation, but may, by general laws, confer on the proper authorities thereof respectively the power to assess and collect such taxes,' applies to purely municipal affairs, and does not constitute a limitation upon the power of the Legislature of the state to impose taxes ·for purposes which, although of a municipal character, the state has a sovereign interest in, such as taxation for police protection, for streets, highways, and bridges, for the purpose of establishing and maintaining a public school system, etc."

The act does not seek to levy a tax for purely municipal purposes, but, on the contrary, for a purpose in which the state has a sovereign interest, and the act is not limited by the section mentioned. *Hocker v. Payne,* 40 Okla. 458, 139 Pac. 121; *Thurston, Co. Treas., v. Frank et al.,* 40 Okla. 463, 139 Pac. 124; *Thurston, Co. Treas., v. Hine,* 40 Okla. 465, 139 Pac. 125; *Ex parte Ambler,* 11 Okla. Cr. 449, 148 Pac. 1061; *A., T. & S. F. Ry. Co. v. State,*

28 Okla. 94, 113 Pac. 921, 40 L. R. A. (N. S.) 1. In this connection counsel cite a number of cases in support of the proposition, all of which appear to involve taxes different from those here involved. The tax in *McDonald v. City of Louisville,* 113 Ky. 425, 68 S. W. 413, was upon the entire property of the city for a purely municipal purpose; and the tax in *Hauser v. Miller,* 37 Mont. 22, 94 Pac. 197, was held to be a tax upon property. In *People v. Martin,* 60 Cal. 153, a license tax was involved. The opinion was by a divided court; the majority holding that a license tax on the occupation of a merchant was within the meaning of the constitutional provision of California similar to the one now under consideration. The provision in the Constitution of California, however, prohibited the imposition of a tax upon an inhabitant of a county for county purposes, and the holding of the court was based upon this particular language in the Constitution, attention being called thereto. No such language appears in our Constitution. By article 12, section 4, of the Constitution of Montana it is provided:

"The Legislative Assembly shall not levy taxes upon the inhabitants or property in any county, city, town or municipal corporation, for county, town or municipal purposes, but it may by law vest in the proper authorities thereof powers to assess and collect taxes for such purposes."

Under this authority a license tax was imposed on every male person engaged in the laundry business, other than steam laundries; seventy per cent. of this license was to be retained by the county, and thirty per cent. paid over to the state. This provision of the Constitution was reviewed in *State v. Camp Sing,* 18 Mont. 128, 44 Pac. 516, 32 L. R. A. 635, 56 Am. St. Rep. 551, and

the court held that the constitutional provision referred to ordinary taxes on property, and did not embrace the tax involved. In the opinion the case of *People v. Martin, supra,* was reviewed and distinguished, the court stating that under the Montana Constitution the Legislature of that state was expressly authorized to impose a tax of the character involved without any limitation as to the purpose for which levied, which was not true in California. In *State v. Union Cent. Life Ins. Co.,* 8 Idaho, 240, 67 Pac. 647, a similar question was involved under the Constitution of that state (article 7), which provides:

"Sec. 6. The Legislature shall not impose taxes for the purpose of any county, city, town or other municipal corporation, but may by law invest the corporate authorities thereof, respectively, with the power to assess and collect taxes for all purposes of such corporation."

In construing this section of the Constitution the court followed the Montana case and distinguished the case of *People v. Martin,* holding that the provision in the Constitution of Idaho was intended to apply only to property taxes. The holdings of the court in these cases are in line with the previous holdings of this court in *Thurston, Co. Treas., v. Caldwell, supra,* and we therefore hold that section 20 of article 10 does not apply to a special tax of the character here involved.

Nor can it be maintained that this act is in conflict with section 33 of article 5 of the Constitution, which provides:

"No revenue bill shall be passed during the last five days of the session (of the Legislature)."

In *Cornelius v. State,* 40 Okla. 733, 140 Pac. 1187, the original act was under consideration, and it was there determined that this act was not a revenue bill within the meaning of said section of the Constitution. It is now urged that the statement therein was *dictum,* in that it was not necessary to the decision or in any way involved. An examination of the opinion will show that the question was squarely presented and decided in that case. In *Anderson v. Ritterbusch, Co. Treas.,* 22 Okla. 761, 98 Pac. 1002, Mr. Justice Kane discusses this provision of the Constitution at length, and reviews the authorities, and in considering Senate Bill No. 245 (Sess. Laws 1907-08, c. 81, art. 9, p. 729), entitled "An act for the discovery of property not listed for taxation, providing for its assessment and the collection of taxes thereon," held that same was not a bill for raising revenue such as should originate in the House under section 33 of article 5 of the Constitution, and in the first paragraph of the syllabus of that case revenue laws are defined as follows:

" 'Revenue laws' are those laws only whose principal object is the raising of revenues, and not those under which revenue may incidentally arise." *Ex parte Ambler,* 11 Okla. Cr. 449, 148 Pac. 1061.

The argument and authorities cited in the cases referred to are applicable to the case at bar, and the act here involved comes within the rule announced, and we think it is not a revenue bill within the contemplation of that section.

The final objection to the act is that the state has no power to tax a mortgage, or the indebtedness it secures, owned by a nonresident of the state. It is sufficient answer to this objection to say that the tax in question

is not a tax upon the mortgage, but, as already determined, is a tax upon the civil privilege of having such mortgage recorded, so as to be entitled to the benefits and exemptions of the laws of this state, and therefore the authorities cited do not control.

Plaintiffs further contend that, if the law and the amendment thereto be held to be valid, they are entitled to have the instrument recorded upon the payment of the fees prescribed by the amendment of 1915, which are much less than those prescribed by the original act. It is not necessary for us to determine this question, as plaintiffs have not offered to pay the tax prescribed by either act, insisting that they are under no obligation to do so, but, on the contrary, are entitled to have said instrument recorded, upon payment of the fees in force prior to the passage of such legislation.

Being of the opinion that the act is valid, the defendant was right in refusing to record said instrument until the payment of the proper charges therefor, and the judgment of the court in refusing the writ of mandamus is affirmed.

All the Justices concur.