### BOWEN *v.* MOELLER.

TAXATION — LAND CONTRACTS — RECORD FEE — AMOUNT DUE AS DETERMINING SPECIFIC TAX.

A land contract executed before but not recorded between the date when the mortgage tax law of 1911 (Act No. 91), took effect and January 1, 1912 (being classed by the terms of the act with contracts executed after the latter date), must pay a tax on the basis of the amount appearing to be due on its face, not on the amount actually due as shown by an affidavit annexed to the instrument; for purposes of record it is to be treated as a contract executed after the act took effect and not in the same manner as contracts recorded before the date named in the statute: nor does such determination have the effect of infringing the constitutional rule of uniformity in taxation since all instruments are given equal privileges under the law.

Certiorari to Wayne; Hosmer, J. Submitted July 11, 1912. ( Calendar No. 25,095.) Decided July 22, 1912.

Mandamus by Herbert Bowen against William F. Moeller, Wayne County Treasurer, to compel respondent to reduce the specific tax as estimated by him upon an instrument offered for record. An order granting the writ is reviewed by respondent on certiorari. Reversed.

*Bowen, Douglas, Eaman & Barbour* (*F. H. & George L. Canfield*, of counsel), for relator.

*Franz C. Kuhn*, Attorney General, *Charles W. Mc-Gill*, Assistant Attorney General, and *Hugh Shepherd*, Prosecuting Attorney, for respondent.

Bird, J. On the 25th day of February, 1912, the relator tendered to respondent a land contract duly acknowledged and witnessed, together with an affidavit showing that the contract was executed in September, 1909; that it was originally given to secure the payment of $260; and that subsequent payments had reduced the amount due thereon to $100. Respondent was requested to compute and indorse on the contract the tax provided for under the provisions of Act No. 91 of the Public Acts of 1911, known as the mortgage tax law. The respondent computed the tax at the sum of $1.50. The relator refused to pay this sum, insisting that it should be computed at the sum of 50 cents, which sum was tendered and refused. This proceeding was then instituted to determine which was the proper amount.

It is the contention of the relator that section 6 of the act entitles him to have the contract recorded by paying a tax of 50 cents a hundred on the actual amount due. The position of respondent is that all of section 6, except the final clause, was a temporary provision and exhausted itself between the 1st day of August, 1911, and the 1st day of January, 1912, when the entire act went into operation. He concedes that relator would have had the right he now contends for had he tendered his contract between those dates, but, having failed to do so, he must now pay on the same basis as though it were an obligation executed after January 1st.

Section 6, the construction of which is involved, reads as follows:

"Sec. 6. The owner of any mortgage which is now, or which may be recorded before this act takes effect, may present to the county treasurer of the county in which

said property is situated, an affidavit setting forth the mortgage and the place of record thereof and the amount of principal secured thereby which is unpaid, and may pay a like tax of one-half of one per cent. upon such amount, and thereafter said mortgage for the purpose of taxation is to be considered and treated the same as other mortgages provided for in this act. Said affidavit shall be recorded in the office of the register of deeds and shall be *prima facie* proof of the amount of the principal unpaid on said mortgage. Mortgages given prior to January first, nineteen hundred twelve, and on which the registry tax provided for in this act shall not be paid, shall remain under the present *ad valorem* system of taxation and shall be assessed and taxed under the present law."

By this legislation it was intended to change the method of taxing mortgages from the *ad valorem* system to a specific one. The act, after providing that land contracts and other liens should be regarded as mortgages, provided a recording tax of 50 cents upon each $100 and major fraction thereof, and then fixed upon January 1, 1912, as a time for the act to go into operation. Had the act stopped here and section 6 not been inserted, it is obvious that all mortgages, whether executed prior to or after January 1, 1912, would have been taxed alike, but the legislature evidently thought some method ought to be provided whereby old mortgages with their partial payments should be placed on a parity with those which were executed and recorded after January 1, 1912, and for that reason inserted section 6. This provision, as we view it, was to afford this opportunity and to fix a period within which it might be accomplished.

If we construe the words in the second line of section 6, "before this act takes effect," to mean "before this act goes into operation," it is then clear that the legislature intended the five months which elapsed between the date of the taking effect of the act, August 1st, and the date on which it went into full operation, January 1st, as a period in which this might be done. In other words, we think the act says to the holders of old mortgages that you may have them recorded and pay the

tax upon the actual amount due thereon if you present them within that period, but if you fail to do so, and present them after that period, you must pay upon the same basis as mortgages which were executed and recorded after January 1st. If you do not choose to present them at all, then they shall continue to be taxed upon the *ad valorem* plan.

Had not the legislature intended a different rule should prevail before January 1st, than afterwards with reference to old mortgages, it is not clear why section 6 was inserted, and neither is it clear what it meant by the words, "The owner of any mortgage which is now or may be recorded *before this act takes effect* may," etc.

It is suggested that this construction infringes the constitutional rule of uniformity. The act provides a uniform rate and extends the privilege to all holders of old mortgages to have them recorded and the recording tax computed upon the actual amount due thereon within a certain period. After the expiration of that period, the law operates upon all mortgages alike, and if, in any given case, there is a discrimination against an old mortgage after January 1st, it is not the fault of the law, but is due to the neglect of the holder of the mortgage in not presenting his mortgage for computation within the period fixed by the act. We are of the opinion that this construction of the law violates no rule of uniformity.

We think the respondent made a proper computation, and the judgment of the trial court is reversed.

MOORE, C. J., and STEERE, McALVAY, BROOKE, STONE, and OSTRANDER, JJ., concurred. BLAIR, J., did not sit.