BANK OF TUSTIN OF J. M. PERRY & CO. *v.* TOWNSHIP OF BURDELL.

1. TAXATION—ACTION TO RECOVER TAXES PAID UNDER PROTEST—STATEMENT OF TAXABLE PROPERTY — ASSESSMENTS — MORTGAGE TAX—EXEMPTION—SPECIFIC TAXATION.

In an action brought by a private bank to recover back taxes which had been paid under protest, where the plaintiffs introduced evidence that they had made a showing to the board of supervisors that the property included in the capital stock of the copartnership, or an amount equal thereto, was invested in land contracts and mortgages which were exempt from other taxation by virtue of Act No. 91, Pub. Acts 1911 (1 How. Stat. [2d Ed.] § 1979 *et seq.*), the plaintiffs were not barred from recovery because they had omitted to furnish the supervisor with a sworn statement for purposes of taxation, and the only compliance with this requirement was a written statement prepared and furnished to the village treasurer and produced before the board of review; sworn evidence was not essential unless required by the board of review.

2. SAME—EVIDENCE—TAX ROLL—INDORSEMENT.

Nor were plaintiffs precluded from bringing an action because the tax roll did not contain an indorsement of the protest made by plaintiffs as required by statute; the

original tax receipt signed by the county treasurer being offered in evidence and containing a minute of the protest; plaintiffs also testifying that the written protest was filed at the time payment was made.

3. SAME—DEFENSES—STATE TAX.

Where the taxes were paid to the township treasurer in January and action was commenced to recover them in February, it is not clear that the right of plaintiffs to recover the State and county tax would be affected by the fact, if true, that the township treasurer had subsequently turned over and accounted for the money received by him for State and county purposes.

4. SAME—BANKS AND BANKING.

Where the evidence showed that plaintiffs, a banking firm, or copartnership, had invested an amount of their capital stock in mortgages and land contracts, upon which the specific tax had been paid under Act No. 91, *supra*, no additional tax could be imposed by the township as a personal property assessment.

5. SAME—CONSTITUTIONAL LAW—SPECIFIC TAXATION.

Said Act No. 91 is valid and not open to the objection that it arbitrarily taxes property without regard to value, or that it is insufficiently uniform, or unfair.

6. CONSTITUTIONAL LAW—TAXATION—CLASSIFICATION.

A law of uniform operation is not unconstitutional because in its practical application it may work to the advantage or disadvantage of persons or corporations organized and doing business, although in the same line, in different capacities, under general or special laws.

7. TAXATION—COPARTNERSHIP—BANKS AND BANKING.

That incorporated banks are not entitled to avail themselves of an exemption under the specific tax law is not a sufficient ground for holding that copartnerships may not claim the right; and no controlling distinction exists between such copartnership and a private person or banker who has invested in exempted mortgages and contracts.

Error to Osceola; Withey, J.   Submitted October 12, 1914.   (Docket No. 76.)   Decided January 4, 1915.

Assumpsit by the Bank of Tustin of J. M. Perry & Company against the township of Burdell for the recovery back of taxes paid under protest. Judgment for plaintiff. Defendant brings error. Affirmed.

*B. N. Savidge,* for appellant.

*Howard F. Withey,* for appellee.

STEERE, J. Plaintiff, a private bank, is a copartnership consisting of six members, and is located in the village of Tustin, in defendant township, where for some years it has been engaged in a general banking business, with J. M. Perry cashier and manager. It has a paid-in capital of $16,500 and a surplus of $1,200. The respective interests of its members are not evidenced by certificates of stock, but are shown upon its books, which credit each member of the firm with the amount he invested in said copartnership.

In April, 1913, the supervisor of defendant township assessed plaintiff, under its firm name, for "personal bank stock" at a valuation of $10,000. Plaintiff was also assessed for real estate and fixtures, but the tax upon them was paid without protest, and is not in controversy. Mr. Perry, plaintiff's cashier and manager, appeared for it before the board of review and made objection to the $10,000 item of personal tax, basing his protest on the claim that the copartnership had invested in real estate mortgages and land contracts an amount equal to, or greater than, its capital, and specific tax had been paid thereon under the provisions of Act No. 91, Pub. Acts 1911 (1 How. Stat. [2d Ed.] § 1979 *et seq.*). The board of review sustained the assessment as made by the supervisor, manifestly taking the view that a private bank was not entitled to such an offset against its capital. On January 9, 1914, plaintiff paid the tax against this $10,000 personal assessment, filing a pro-

test setting forth the same reasons urged before the board of review. Within 30 days after payment of said tax this action was begun to recover the amount so paid under protest. On the trial a verdict was directed by the court in favor of plaintiff at the conclusion of the testimony, for the entire amount so paid, with interest from date of payment.

Defendant's most important assignment of error is directed to refusal of the court to direct a verdict in its favor "on the ground that plaintiff was not entitled to have deducted from its property, for the purpose of taxation, any amount invested in mortgages and land contracts by reason of having paid the specific tax on the same."

It is also claimed that plaintiff was not entitled to urge the foregoing question, because it had furnished the supervisor no sworn statement of its taxable property, as required by statute, and no proper showing was made before the board of review as to the same. It was shown that a statement for taxation purposes which had been prepared and furnished the village assessor was produced before the board of review and consulted in making computations during the discussion. It is admitted no other statement was furnished by plaintiff that year, though it was claimed, and denied, that the supervisor told Perry that the one given the village assessor would do for both of them. When Perry appeared before the board and urged his objections to the tax, no other proof or papers were offered or asked for except the statement which had been furnished the village assessor. Perry testified:

"My statement as to the amount of money the bank had invested in contracts and mortgages was not questioned by any person, and no person asked for their production."

It is clear that the assessment as fixed by the su-

pervisor was sustained on the theory that a private bank was not legally entitled to the claimed offset against its invested capital, and not because of doubts or lack of corroborating evidence of Perry's statements as to the financial condition of the bank and its investments in specifically taxed securities. Conceding that it was necessary to make a showing to the supervisor and board as to property claimed to be wholly exempt from general taxation, and to appear for that purpose before said board of review, we are satisfied that, under the circumstances disclosed, there was sufficient compliance with such requirement. In *Griswold v. School District,* 24 Mich. 262, it was said:

"We also think sworn evidence was not essential, unless called for by the board. That body could act upon personal examination, or any evidence which to them was satisfactory."

It is also claimed no competent proof was made of a proper protest at the time the taxes were paid in January, and error is assigned on refusal of the court to sustain defendant's objections in that particular. The tax roll offered in evidence did not have minuted upon it a statement that the tax was paid under protest, as required by statute, but the original tax receipt signed by the treasurer was produced and identified. It bore a minute of the protest indorsed upon it, in substance the same as urged before the board of review. Perry testified without contradiction that when making payment he filed a protest, following which this occurred:

"*Q.* You have already testified you made and filed a written protest at the time you paid the tax?
"*A.* I did; I hold the original protest in my hand.
"*Counsel for Plaintiff:* I offer the protest just referred to by the witness in evidence.
"*Counsel for Defendant:* I object to it as incompetent, immaterial, and irrelevant, and not sufficiently identified. (Objection overruled; exception noted.)"

It is urged that this was error, because there was no proof that the paper came from the treasurer's office, where the law requires it to be filed. We discover no error in the ruling complained of.

Objection is urged that in any event the directed verdict was excessive as to State and county taxes because, presumptively, they had been paid over by the township treasurer, and were not in his hands at the time this action was brought. These taxes were paid to him under protest, on January 9, 1914, and action for their recovery was begun on February 6, 1914. He had until the 1st of March to collect the taxes upon his roll and account in full for all moneys received by him, and it would be a scant presumption under the circumstances of this case that he had disposed of those taxes when suit was commenced. Neither is it clear that plaintiff's rights would be affected had he previously paid them over to the county treasurer. Though State and county taxes were not involved in *Byles* v. *Township*, 52 Mich. 612 (18 N. W. 383), in holding a township liable for school and highway moneys paid over to the proper authorities, it was said:

"There is an apparent hardship in holding the township liable for moneys thus paid over; but, on the other hand, when the plaintiff traces his moneys to the treasury of the township, it would seem plain that a right had accrued in his favor which could not be discharged by subsequent action of the township authorities to which he was in no sense a party. The defendant has received his money, and must account to him for it; not to any one else."

It is also questionable whether this objection is covered by any assignment of error.

Defendant's other assignments of error, which have all been carefully examined and considered, are not thought of sufficient importance to call for any discussion apart from the main question here in-

volved, which is, as before noted, whether plaintiff is entitled to have deducted from its capital for taxation purposes its investments in specifically taxed securities, under section 10 of the specific tax law, heretofore mentioned, which is as follows:

"That class of credits other than the mortgages given prior to January 1st, 1912, upon which this act imposes a specific tax shall be exempt from further general taxes under the laws of this State. All acts and parts of acts in contravention of the provisions of this act are hereby repealed."

Plaintiff's fiscal condition at the time of the assessment was as follows:

| | |
|---|---|
| The amount of money on hand and in transit ................................. | $17,792 96 |
| The amount of funds in the hands of other bankers, brokers, and other persons, subject to draft ............................. | 1,067 71 |
| The amount of checks and other cash items not included in either of the preceding items ................................. | 1,193 69 |
| The amount of bills receivable, discounted or purchased, and other credits, due or to become due ................................. | 64,806 83 |
| Aggregate personal assets ................. | $84,861 19 |
| Amount of deposits made by other parties.. | 69,192 69 |
| The amount of accounts payable, other than current deposits ......................... | 3,000 00 |
| Aggregate liabilities ...................... | $72,192 69 |
| Amount invested in mortgages and contracts specifically taxed .................. | $17,552 30 |

Perry testified to the foregoing in connection with various exhibits put in evidence. It was conceded in the record that the total of exhibits introduced showing amount invested in mortgages and contracts "is as testified to by Mr. Perry, and that the specific tax had been paid on all." Evidently, if deduction is made for the amount of plaintiff's funds invested in

mortgages and contracts, upon which said Act No. 91 imposes a specific tax, its liabilities exceed its assets.

Counsel for defendant in his brief points out that, under section 19 of the general tax law (section 3842, 1 Comp. Laws [1 How. Stat. (2d Ed.) § 1787]), the method of arriving at the assessable value of the property of banks whose capital is not represented by shares of stock, and of every private banker or stock jobber, is by deducting the aggregate of all accounts payable, including deposits, from the aggregate of "the money on hand and in transit, the amount of funds deposited with other banks, the amount of checks and cash items not included in the preceding items, and the amount of bills receivable, discounted or purchased, and other credits due or to become due," and argues:

"This statute by its positive terms excludes from consideration other debts or credits if any exist, and excludes the exemption which plaintiff now claims for the amount invested in real estate mortgages. If not, if Act 91 of the Pub. Acts of 1911 repeals section 3842 and gives to private banks the exemption claimed, the discrimination in favor of private and against incorporated banks renders the act unconstitutional and void."

The mortgages and contracts involved here are unquestionably of the class designated "other credits due or to become due." To what extent this section should be taken into consideration is questionable, since in *Detroit Citizens' St. Ry. Co.* v. *Common Council*, 125 Mich. 673 (85 N. W. 96, 86 N. W. 809, 84 Am. St. Rep. 589), said section 3842 is held unconstitutional, because it provides for doubly taxing the property of corporations. But whether such holding applies solely to that subdivision of the lengthy section touching companies and corporations only in relation to which the scheme of taxation is designated as defective and in violation of the Constitution, we

need not consider, as the rule for construing and applying said Act No. 91 in connection with any similar provisions in the general tax law has been announced in *Northern Assurance Co.* v. *Common Council,* 176 Mich. 80 (141 N. W. 904). The court there had under consideration Act No. 235, Pub. Acts 1903, which directs the method of determining the net personal assets of insurance companies for purposes of taxation. It concludes as follows:

"In computing the taxable property of insurance companies organized under the laws of this State, the value of the real property on which a company pays taxes shall be deducted from its net assets above liabilities, as determined and shown by the last report of the commissioner of insurance, including in such liabilities the legal reserve required by the laws of this State, or the regulations of the insurance department, and the remainder shall be the personal property for which the company shall be assessed."

Counsel there contended that, under such positive mandate, with the exclusion distinctly designated, no deduction for exempt property could be made from an assessment so determined, unless the exemption appeared upon the face of the commissioner's report. It was held that the method so prescribed should be followed in the first instance to arrive at assets otherwise liable to assessment, and it then became—

"the duty of the assessing officers, acting under their general powers as assessing officers, to determine what portion, if any, of such assessment is exempt by law from taxation, and, when it is ascertained that the assessment includes securities exempt by law, the deduction should be made" (citing *Union Trust Co.* v. *Common Council,* 170 Mich. 692 (137 N. W. 122).

In the latter case, which held that specific tax-paid mortgages and contracts are also exempt from city taxes, the exemption being from all *ad valorem* taxation, the constitutionality of Act No. 91 was attacked, on the ground that the rule of uniformity was vio-

lated by provisions exempting from all taxation mortgages and land contracts held by educational, charitable, and religious societies. With this contention the court did not agree, citing *People* v. *Auditor General*, 7 Mich. 90, in which it is said:

"The legislature has the power of prescribing the subjects of taxation, and of exemption, but it cannot arbitrarily tax property according to locality, kind, or quality, without regard to value (Sedg. on Stat. 557), but in this respect it must act by uniform rules."

Act No. 91, in itself, certainly does not offend in any of those particulars. By its terms it is of general application and by uniform rule, with the exception referred to, which was construed as within legislative power. It plainly provides that securities of the kind mentioned, wherever and by whomsoever held, upon which the specific tax has been paid, cannot be subjected to *ad valorem* taxation. Such assets, whether owned by a corporation, a copartnership, or an individual, are nonassessable.

A law is not unconstitutional because in its practical application it may work to the advantage or disadvantage of persons or corporations organized and doing business, though in the same line, in different capacities, under other general or special laws.

The contention that plaintiff is not entitled to the benefit of this law because incorporated banks under the laws applicable to them are precluded from availing themselves of it, and, as a result, private banks have a decided advantage over incorporated banks in loaning money on mortgages and contracts, is an argument applying, and properly appealing, rather to that branch of the government which makes and repeals the laws than to the courts whose duty it is, taking the laws as they find them, to declare and apply them. Regularly chartered banks incorporated under the general banking law and supervised by the State

banking department have imposed upon them various duties, limitations and expenditures to which private banks are immune. Plaintiff has no entity peculiar to the business of banking, nor even any distinct legal entity with like defined rights and duties as an artificial person in law. Its general rights and duties are the same as any private individual who might engage in the banking business. Its copartnership relations, based on a contract between themselves, have their legal existence as to others under the law of agency, and are no different than if the same persons had each contributed a certain amount and entered upon the prosecution of any other business enterprise on a joint account. The assumed name under which their business is prosecuted is in law only a conventional mode of collectively designating the persons who have so associated together. Any change in membership gives the name a new significance and gives rise to changes in rights and obligations, as between themselves and the general public.

In the application of this law we conclude that no controlling distinction can be drawn between plaintiff and any private person who has invested in such securities, and, as the law now stands, we are impelled to hold that the learned judge rightly construed and applied it.

The judgment is affirmed.

BROOKE, C. J., and MCALVAY, KUHN, STONE, OSTRANDER, BIRD, and MOORE, JJ., concurred.