RODENHOUSE *v.* DE GOLIA.

1. REAL PROPERTY—LAND CONTRACTS—ASSIGNMENTS—FRAUD—EVI-
DENCE—SUFFICIENCY.

On a bill by the assignee of a contract for the purchase of
land against his assignor for the recovery of the consider-
ation paid, evidence *held*, sufficient to show fraud and
misrepresentation by the assignor.

2. SAME—LAND CONTRACTS—TAXATION—STATUTES.

Act No. 91, Pub. Acts 1911, § 8 (1 Comp. Laws 1915, §
4275), providing that no suit may be maintained for the
foreclosure of a land contract on which the tax provided
by such act has not been paid, being a tax measure, is in-
tended for the purpose of compelling the payment of the
tax imposed, and the requirements of the law are fully met
where the tax is paid before the decision of the court and
the conclusion of the hearing.

3. SAME—LAND CONTRACTS—ASSIGNMENTS—CONSENT OF VENDOR—
EVIDENCE—SUFFICIENCY.

Evidence *held*, insufficient to show that the owner of a con-
tract for the sale of real estate consented verbally to a
transfer by the contract purchaser to another of such pur-
chaser's interest in the contract.

Appeal from the superior court of Grand Rapids;
Dunham, J. Submitted July 26, 1917. (Docket No.
2.) Decided September 27, 1917.

Bill by Albert Rodenhouse against William E. De
Golia, Henry H. D. Langereis and others to set aside
a deed and sale on the ground of fraud. Defendant
Langereis filed a cross-bill for the forfeiture of a land
contract. From the decree rendered, defendant De
Golia appeals. Affirmed.

*Don E. Minor,* for plaintiff.

*Hartley E. Hendrick,* for appellant.

KUHN, C. J.  This bill was filed to obtain equitable relief arising from a situation created by the following facts:

On November 1, 1908, H. H. D. Langereis, one of the defendants, was the owner of a certain lot in the city of Grand Rapids, which on that date he sold upon land contract to Sherman B. Thomas and wife for $2,100. Thomas paid $500 down, and was to pay $10 on the first of each month thereafter, with interest at 6 per cent. On August 23, 1913, Thomas and wife sold their interest in this property to Sylvester Vreeland and Celia B. Vreeland for the sum of $2,200. A new contract was made out to the Vreelands, and the contract of Langereis to Thomas was not assigned by Thomas and wife to Vreeland. The terms of this new contract were, $215 to be paid down on the date of the transaction and the balance at the rate of $15 or more on the 23d day of each month thereafter until the balance due was paid, with interest thereon at 6 per cent. Upon the failure to make any payment, the grantors could either declare the contract forfeited or exercise their option to enforce collection thereof in a suit at law. The contract also provided that the Vreelands should not assign nor transfer it, nor lease or sublet said premises, without the previous assent of the Thomases indorsed thereon. It further provided that if the Vreelands violated or neglected to fulfill any of the covenants or agreements therein, they should forfeit all right or claim thereunder and be liable to removal therefrom in the same manner as is provided by law for a tenant that holds over premises contrary to his lease, and notice to quit and of forfeiture were each waived in writing.

Soon after this sale, Thomas and wife sold their interest in this contract to Langereis for $800. The first payment on the contract of August 23d was paid to Langereis instead of to Thomas, and was paid on Sep-

tember 23, 1913. Thereafter the Vreelands continued to pay their monthly payments to Langereis until June, 1914. This payment was not made. On July 23, 1914, Vreeland paid the installment due and payable on the contract for that month, and thereafter kept up the monthly payments until November, 1914, which payment also was not made, and neither the June nor November, 1914, payments had been made up to the date of the hearing of the suit. Payment was then resumed by Vreeland, and on December 21, 1914, he made that monthly payment and each subsequent monthly payment until April, 1915, and this payment was passed. Payment was again resumed, on May 21, 1915, and continued until July 23, 1915, when the last payment was made, leaving unpaid at the time of the suit $45 and interest, being the monthly payments for June and November, 1914, and the April, 1915, payment. There was therefore due at that time upon the contract by its terms these three monthly payments and interest and taxes and all the payments due upon the contract by its terms after the month of July, 1915. On the date of the sale by the Thomases to the Vreelands there was $1,030 still due Langereis, but Langereis paid $800 in his purchase of the Thomas interest in the contract, so that Langereis still had due him for the property $1,830 and some additional interest and taxes.

On October 7, 1915, the Vreelands assigned all their interest in the Thomas contract to William E. De Golia, and on October 15th following, De Golia assigned all his interest in that contract to Albert Rodenhouse, the consideration being a lot in the city of Grand Rapids and an automobile, the total value of the property in question being $700. De Golia also gave to plaintiff, as a part of the consideration, his note for $65, secured by a mortgage back on plaintiff's lot in like amount.

When Langereis learned that De Golia had bought the Vreelands' contract, he called up De Golia and told him to leave the property alone, because he would not consider any transfer whatever, and upon learning that Rodenhouse, the plaintiff, had bought the property from De Golia, he also got into communication with Rodenhouse and told him that he was the owner of the property and that De Golia had no right to sell. Rodenhouse thereupon asked him to be allowed to keep the place and make the payments, but Langereis would not allow this. The plaintiff thereupon sought a return of the lot and automobile from De Golia, and learned that the lot had been transferred to a brother of De Golia's, and that the automobile had been sold to one Jack Williams, one of the defendants. The plaintiff thereupon filed his bill, setting up these facts, and prayed that the lot and automobile be returned to him. Defendant William E. De Golia answered, and Langereis also filed an answer in the nature of a cross-bill, praying that the contract running from the Thomases to the Vreelands be declared forfeited to him, as the assignee and owner, and that De Golia and the plaintiff be declared to have no right, title, or interest therein.

After hearing the case, the trial judge decreed that the defendant Langereis is the owner of the lot in question, free and discharged from any interest, claim, or title thereto or therein by the Vreelands, William De Golia, Frank De Golia, or Albert Rodenhouse, the parties to this suit; that the deed from William E. De Golia to Frank De Golia is void, and that Frank De Golia quitclaim all his right, title, and interest therein to Albert Rodenhouse; that the mortgage by William E. De Golia to Albert Rodenhouse be declared null and void; that the assignments of the contract from the Vreelands to William E. De Golia and from him to Albert Rodenhouse be declared null and void; and the

decree also provided that the court does not, in any manner, dispose of any question between Albert Rodenhouse and De Golia, or any person, so far as the automobile involved in the transaction is concerned. From this decree defendant William E. De Golia is the only one to appeal.

Plaintiff's bill charges the defendant William E. De Golia as being guilty of fraud and misrepresentation, to the deception and injury of the plaintiff. This the trial judge found was fully substantiated by the proofs, and with this conclusion we agree. The record is conclusive that De Golia knew, when he first began to deal with the plaintiff, having a copy of the Vreeland contract in his possession, that he was prohibited by its terms from transferring or assigning, as well as renting, the premises without the consent of Langereis. Notwithstanding this, he told the plaintiff that he had authority to make the transfer. In this connection there should also be considered his haste in closing the deal, for the reason, as he admits, that he did not want the plaintiff to get away; that the note which was taken from the defendant Williams was negotiated and put out of De Golia's hands the following day; and his immediately deeding the lot to his brother, Frank De Golia, for the reason, as he admits, that the plaintiff had told him he was going to try to get the lot back. The bad faith of De Golia appears throughout the entire transaction.

On the trial of the case, the attorney for William E. De Golia made a motion to strike from the record the contract that had been introduced in evidence by the plaintiff, together with all evidence in relation thereto, because it appeared that the mortgage tax provided for in Act No. 91, Public Acts of 1911 (1 Comp. Laws 1915, § 4268 *et seq.*), had not been paid. Langereis testified that he had not paid the tax on the contract because he did not know it was necessary, and the tax

was in fact paid to the county treasurer after the hearing was begun, but before the case was submitted to the court for a decision.  We see no merit in the contention that the result reached by the trial judge should be changed because of his failure to grant the motion which was made.  It is clear that the purpose of the section referred to, being a tax measure, is to compel the payment of the tax imposed, and, having been paid before the decision of the court and before the conclusion of the hearing, the requirement of the law was fully met.  Such was the order of this court in *Nelson* v. *Breitenwischer,* 194 Mich. 30 (160 N. W. 626).

Counsel for the appellant in his brief argues and contends that the record shows that Mr. Langereis had verbally consented to the transfer of this property by the Thomases to the Vreelands, and that by so doing, he waived the right to enforce that clause of the contract without the written consent of Mr. and Mrs. Thomas, and that by passing the payment that had become due from the Vreelands and accepting payments thereafter, he again waived the right of declaring a forfeiture by reason of such past payments. Whether or not Mr. Langereis verbally consented to a transfer of the property is a question of fact which was decided adversely to appellant's contention by the trial judge, with whose conclusion we are in full accord, his reasons therefor being stated as follows:

"It is also the claim of the Vreelands, as well as the claim of De Golia, that Langereis gave his oral consent to the Vreelands to sell their interest in this property that they had therein by virtue of the land contract above mentioned of date August 23, 1913, and De Golia also claims that before he purchased this interest from the Vreelands on October 7, 1915, he had the oral consent of Langereis to purchase this interest from the Vreelands.  While this is the testimony in part and in substance of both Vreeland and his wife

and William E. De Golia, there are other portions of their testimony that is much more conclusive that Langereis never gave any such consent thereto. Both the Vreelands, as well as the De Golias, testified, in substance, that Langereis told them that he would consent to nothing with reference to the transfer of the Vreeland contract until everything was squared up, all payments made, and De Golia testified that he agreed with the Vreelands that he would pay all of the amounts due to Langereis, but he did not make such payments, and has never made them, or any part thereof. On October 7, 1915, Sylvester Vreeland and wife assigned their interest in said contract of date August 23, 1913, to William E. De Golia; eight days thereafter William De Golia assigned all his interest under that contract to Albert Rodenhouse.

"To my mind it is clearly apparent, and I so find as a matter of fact, that the Vreelands and De Golia never had the consent of Langereis for the assignment of said contract by the Vreelands to De Golia, and that immediately after October 7, 1915, De Golia knew that Langereis was displeased with such sale and assignment, and that he would not acquiesce therein.

"I also further find that, by reason thereof, De Golia, eight days after receiving his interest in said contract, sold and assigned it to Albert Rodenhouse."

We are unable to agree that any of the contentions advanced by counsel for appellant in his brief would justify us in reversing the decision made in the court below, and therefore affirm the decree, with costs to the appellee.

STONE, OSTRANDER, BIRD, MOORE, STEERE, BROOKE, and FELLOWS, JJ., concurred.