COMMERCE-GUARDIAN TRUST & SAVINGS BANK *v.* STATE
OF MICHIGAN.

1. STATUTES—CONSTRUCTION—TAXATION—MORTGAGES.

In view of the fact that since its enactment Act No. 91,
Pub. Acts 1911 (1 Comp. Laws 1915, § 4268 *et seq.*), has
been construed as a tax on mortgages and land contracts
by the legislative, judicial, and administrative departments
of the State government, a different construction should
not now be placed upon it by the Supreme Court unless
the language contained in it will admit of no other con-
struction.[1]

2. SAME—CONSTITUTIONAL LAW—TITLE OF ACT—PURPOSE OF RE-
QUIRING OBJECT OF ACT TO BE EXPRESSED IN TITLE.

The purpose of Art. 5, § 21, of the State Constitution,
requiring that "no law shall embrace more than one
object, which shall be expressed in its title," was, first,
to prevent the bringing together into one bill subjects
diverse in their nature and having no necessary connection,
with a view to combine in their favor the advocates of
all, and, second, to challenge the attention of those affected
by the act to its provisions.[2]

3. SAME—TEST TO BE APPLIED.

In testing acts of the legislature by said clause of the
Constitution, the Supreme Court should not, on the one
hand, be so hypercritical as to require every matter of
detail to be stated in the title, nor, on the other hand,
so liberal as to render said provision nugatory, but re-
gard should be had to the letter and spirit of the Con-
stitution, the evils it was intended to prevent, the rights
it was intended to preserve, and, so regarding it, to test
the act which is claimed to be repugnant to this clause
candidly and justly.[3]

4. SAME—CONSTRUCTION—MORTGAGES—TAXATION.

Section 1 of Act No. 91, Pub. Acts 1911 (1 Comp. Laws
1915, § 4268), is declaratory of the purpose to in-
clude in the word "mortgage" every instrument by which

[1]Statutes, 36 Cyc. pp. 1140, 1142, 1143; [2]Id., 36 Cyc. p. 1017;
[3]Id., 36 Cyc. pp. 1018, 1019, 1044.
For authorities discussing the constitutionality of mortgage
registration tax, see note in L. R. A. 1916A, 865.

"a lien is created over or imposed upon real property," and it is the indebtedness secured by such liens upon which the tax is imposed.[4]

5. SAME—CONSTRUCTION—TAXATION—SPECIFIC TAX ON MORTGAGES. While more appropriate language might have been employed in the title of said act, *held*, that a fair construction of that used clearly indicates that it was intended to impose a specific tax on real estate mortgages and land contracts, and that it sufficiently meets the requirements of the Constitution.[5]

BIRD, FELLOWS, and WIEST, JJ., dissenting.

Error to Lenawee; Hart (Burton L.), J.    Submitted April 25, 1924.    (Docket No. 82.)    Decided October 6, 1924.    Rehearing denied December 31, 1924.

Assumpsit by the Commerce-Guardian Trust & Savings Bank against the State of Michigan and others for taxes paid under protest.    From an order of dismissal, plaintiff brings error.    Affirmed.

*Ritter & Schminck* and *H. Thane Bauman*, for appellant.

*Andrew B. Dougherty*, Attorney General, *Clare Retan*, Deputy Attorney General, and *Henry I. Bourns*, Prosecuting Attorney, for appellees.

WIEST, J. (*dissenting*).    August 15, 1921, a mortgage of real property, situated in Lenawee county, this State, authorizing the issuance, in the State of Ohio, of first mortgage bonds in the sum of $600,000, was executed in Ohio by the National Dairy Company, an Ohio corporation, and delivered to the Commerce-Guardian Trust & Savings Bank, also an Ohio corporation.    All bonds thereunder have been issued in Ohio to, and are owned and held by residents of the States of Ohio and West Virginia.    In March, 1923,

[4]Statutes, 36 Cyc. p. 1044; [5]Id., 36 Cyc. p. 1044.

the mortgage was presented to the register of deeds for Lenawee county for record, $20.35 fees tendered, and registry refused unless 50 cents on each $100 of the principal debt stated in the mortgage was paid under the provisions of Act No. 91, Pub. Acts 1911 (1 Comp. Laws 1915, § 4268 *et seq.*), as amended (Comp. Laws Supp. 1922, § 4271 *et seq.*). Thereupon $3,000 was paid by plaintiff under written protest, setting up the facts relative to the mortgage and bonds and residence of owners thereof, claiming the demand was in violation of the Constitution of the United States and constituted a taking of property without due process of law and demanding return of the money exacted. This action was brought to recover the $3,000 paid to the treasurer for the county of Lenawee and held, one-half by the county of Lenawee and the other one-half by the State of Michigan. On motion of defendants the suit was dismissed and plaintiff prosecutes review by writ of error.

Plaintiff contends the act imposes a specific tax upon credits, founded upon and evidenced by mortgages and liens upon real property, and not upon mortgages, and is in violation of the Constitution of the United States and the Fourteenth Amendment in so far as it purports to tax credits owned and in the possession of nonresidents of the State of Michigan.

Counsel for defendants contend the act does not impose a tax on credits, but imposes a specific tax on mortgages and other instruments creating a lien on real property within this State; that the *situs* of such instruments is within the State of Michigan and the act is valid.

The act was before this court in *Union Trust Co.* v. *Detroit Common Council,* 170 Mich. 692; *Bowen* v. *Moeller,* 171 Mich. 547; *Economy Power Co.* v. *Daskam,* 174 Mich. 402. The question here presented seems not to have been decided in this State.

The title to the act is:

"An act to provide for the assessment and the collection of a specific tax upon the class of credits founded upon and evidenced by mortgages and liens upon real property, and to repeal all acts and parts of acts in contravention thereto."

The difficulty we experience in determining the issue at bar is not in considering the power of the legislature to impose a tax for the privilege of registry of mortgages with its accompanying protection of the security and availability of our laws in enforcement thereof, but whether the act admits of such construction, or confines us to a holding that it imposes a specific tax upon credits designated as founded upon and evidenced by mortgages and liens upon real property. The legislative purpose, expressed in the title, is an exercise of unquestioned power over credits evidenced by mortgages and liens upon real property within the State, where the credits so founded and evidenced are owned or held by residents of the State. But such is not the case here presented. Has the legislature, by the enactment, imposed the specific tax upon credits, identified as founded upon and evidenced by mortgage liens upon real property in this State, even in cases where the mortgage is given without this State, by one nonresident to another, to secure a principal indebtedness due upon bonds owned by nonresidents and never within this State? If the act is held to do this, then does it overreach legitimate bounds?

It is contended the tax is not upon credits but upon mortgages. We must accept the language of the act upon this. The title to the act must be considered as truly indicative of the legislative purpose under the mandate of the Constitution. The title to the act clearly limits the specific tax to an assessment upon and collection from the class of credits founded

upon and evidenced by mortgages and liens upon real property. To say this imposes a tax upon the collateral security, and not upon the class of credits evidenced by mortgages, is to read the title without considering the meaning of legal terms therein employed.

The debt of a mortgagor is the credit held by a mortgagee and usually evidenced by note or bond to which the mortgage lien is collateral security only. Notes and bonds, secured by mortgage, constitute no interest in the mortgaged premises in the nature of real property.

Section 1 of the act provides:

"For the purposes of this act all indebtedness secured by liens upon real property shall constitute that class of credit upon which this act imposes a specific tax. The word 'mortgage' as used herein shall include every mortgage or other instrument by which a lien is created over or imposed upon real property, notwithstanding it may also be a lien upon other property, or there may be other security for the debt, and shall also include executory contracts for the sale of real property, and deeds or other instruments that are given to secure debts."

Section 2 provides:

"A tax of fifty cents for each one hundred dollars and each remaining major fraction thereof of the principal debt or obligation which is, or under any contingency may be, secured by a mortgage upon real property situated within this State recorded on or after the first day of January, nineteen hundred twelve, is hereby imposed on each such mortgage, and shall be collected and paid as hereinafter provided."    *    *    *

Does this law undertake to assess the creditor upon credits secured by mortgage? It contains definitions and provisions clearly demonstrating such purpose or at least result; whether so by intention or inadvertence is immaterial. While the act, in the main, speaks of the principal indebtedness as the basis for assess-

ing the tax, it must be remembered that the tax is exacted of the mortgagee on the credit he holds when he seeks registry of the security collateral thereto.

Section 1 of the act imposes the specific tax upon a class of credit.   To state it by question and answer: Upon what class of credit is the specific tax imposed? Upon all indebtedness secured by liens upon real property.

The act runs true to its title, and credits founded upon and evidenced by mortgages, and liens upon real property, constitute the basis for the assessment and collection of the specific tax.   This is manifested by the provision in section 4 of the act, which in substance provides, that if the mortgage covers real property, situated partly within and partly without this State, then the tax commission is to determine the relative value of the mortgaged property within this State as compared with the total value of the entire mortgaged property, and determine the proportion of the principal indebtedness secured by the mortgage on property within the State and use the same to measure the tax.

Section 5 provides, in substance, that if the mortgage is made in trust to secure payment of bonds, and only a partial amount of the "indebtedness" has been advanced when the mortgage is presented for record, the tax is to be computed only upon the amounts advanced thereon and secured thereby, and, when further amounts are advanced the tax is imposed thereon.   It is apparent all through the act that the credit extended measures the tax.   It is true section 6 permits the owner of any mortgage, recorded before the act, to show the amount of the principal unpaid thereon, pay the specific tax on such amount, and thereafter, the mortgage, for the purpose of taxation, is treated the same as other mortgages under the act.   And

228—Mich.—21.

"Mortgages given prior to January first, nineteen hundred twelve, and on which the registry tax provided for in this act shall not be paid, shall remain under the present *ad valorem* system of taxation and shall be assessed and taxed under the present law."

If it be considered that this constitutes the tax one for the privilege of registry of mortgages and not one upon credits evidenced by mortgages, then the title will have to be extended to say so. The only place in the whole act where the tax is designated as a "registry tax" is the one just mentioned.

Section 10 provides:

"That class of credits other than the mortgages given prior to January first, nineteen hundred twelve, upon which this act imposes a specific tax shall be exempt from further general taxes under the laws of this State."

Counsel for defendants state:

"While the title to the act is somewhat ambiguous and might be open to the interpretation which counsel for plaintiff places upon it, nevertheless when read in connection with the body of the act and in view of the fact that a mortgage in this State is not an evidence of indebtedness but merely a security for a debt and the credit is evidenced by the note or bonds secured thereby, any ambiguity in the title disappears and the legislative intent both as expressed in the title and the body of the act itself is to impose a specific tax on the security which is the mortgage and does not attempt to tax the credit which is secured by said mortgage."

We cannot accept this reasoning. The title to the act is not to be amplified by the enactment. The title declares the object and limits the enactment thereto.

It is claimed the mortgage is the subject of the specific tax and its *situs* is in this State, and *Detroit Common Council* v. *Board of Assessors,* 91 Mich. 78 (16 L. R. A. 59) ; *Mumford* v. *Sewall,* 11 Or. 67 (50 Am.

Rep. 462)·; and *Savings & Loan Society* v. *Multnomah County,* 169 U. S. 421 (18 Sup. Ct. 392), are cited. The case of *Detroit Common Council* v. ·*Board of Assessors* is not in point.   That case arose under the general tax law which declared a mortgage, for the purpose of assessment and taxation, was to be deemed and treated as an interest in the land pledged and the assessment to the owner of the land reduced thereby. This, for the purpose of taxation, changed the equitable doctrine otherwise prevailing in this State, that a mortgage conveys only a lien.   What we have just said applies to the other cases cited.   The law in question does not declare that mortgages, for the purpose of the specific tax assessment, shall be deemed and treated as an interest in the land pledged.

In *People* v. *Trust Co.,* 205 N. Y. 74, 78 (98 N. E. 207), the court stated:

"It is to be observed that though the Supreme Court of the United States has upheld the right of a State to tax a mortgage on real estate within its limits held by a nonresident (*Savings & Loan Society* v. *Multnomah County,* 169 U. S. 421 [18 Sup. Ct. 392]), it seems still to adhere to the doctrine declared in the case of *State Tax on Foreign-Held Bonds,* 15 Wall. (U. S.) 300, that negotiable bonds issued by a corporation and secured by a mortgage on property within a State are not subject to taxation by that State. *Blackstone* v. *Miller,* 188 U. S. 189, at p. 206 (23 Sup. Ct. 277).   Many and possibly all of these bonds may be held without the State and, under the doctrine cited, might be immune from the taxing power of this State."

It should be kept in mind that the cases upholding the right of a State to tax a mortgage, held by a nonresident, on real property within its limits, are based on legislative declarations constituting the mortgages an interest in real property and *situs* thereof in the State and, in most instances, reducing the assess- .

ment to the owner by the amount of the mortgage. The underlying purpose in substituting a registry tax for an *ad valorem* is to place foreign and resident lenders of money on a parity.

Our attention has been directed to *Mutual Benefit Life Ins. Co.* v. *Martin County*, 104 Minn. 179 (116 N. W. 572), upholding the mortgage registry tax in Minnesota. Let it be understood we do not hold such a tax invalid. The Minnesota law is entitled "An act to provide for the taxation of mortgages of real property." The word "mortgage" is defined in the act as "any instrument creating or evidencing a lien of any kind" on real property. Laws of Minnesota 1907, p. 448. That law imposes a registry tax upon "the principal debt or obligation which is, or in any contingency may be, secured by any mortgage." This, of course, may be done, as a method of determining the amount of the registry tax on the mortgage, and is a far different thing than placing a specific tax upon credits founded upon and evidenced by mortgages.

"Mortgages are 'property' so as to be taxable. They are personal property taxable as credits, except where a statute makes real estate mortgages taxable as an interest in real property or where some other form of taxation is provided for. * * * In probably a majority of the States real estate mortgages are taxed as personal property; in some they are taxed as an interest in real estate; in others a recording tax is imposed which takes the place of all other taxes; and in still other States they are exempt." 2 Cooley on Taxation (4th Ed.), § 581.

In *Capital Trust & Savings Bank* v. *Wallace*, 45 N. D. 182 (177 N. W. 440), what was there said upon the subject of taxing credits applies to the case at bar.

"The fiction of *mobilia sequuntur personam* is responsible for a broad assertion of the lack of juris-

diction to tax a credit in the State of a debtor's domicile.    See *State Tax on Foreign-Held Bonds,* 15 Wall. (U. S.) 300.    But while this fiction has been compelled to yield to facts pointing to the necessity of equal taxation of those engaged in business within a sovereign State, the principle has never been so completely reversed as to authorize the State to seize upon the sole fact of the residence of the debtor and the presence of his mortgaged property within it as determining the taxing jurisdiction of the State.    We are satisfied that this cannot be done where it would render negotiable instruments in the hands of nonresident owners subject to tax in this State."

As stated in 37 Cyc. p. 804:

"A mortgage on land so far partakes of the character of realty that it is competent for a legislature to provide that it shall be taxable in the county where the land lies, without regard to the domicile of the mortgagee.    But regarded as an investment or security, a mortgage is personal property of an intangible character, and hence follows the person of its owner and is taxable only where he resides.    Therefore, in the absence of a statute establishing a different rule, a mortgage on land situated within a particular State is not taxable by that State or by its authority when the owner and holder of the mortgage is a nonresident."

The legislature has power to establish a *situs,* independent of the domicile of the owner, in cases where bonds and mortgages are in the State, even though the owner is a nonresident, but not when such evidences are in the possession of the nonresident owner without and never within the State.    *New Orleans* v. *Stempel,* 175 U. S. 309 (20 Sup. Ct. 110).    It should be kept in mind that the law of *situs* is not involved when the specific tax is for registry privilege.

Decisions under the inheritance and succession tax laws are called to our attention and their analogy urged by counsel for defendants.    This claimed analogy was urged in *Buck* v. *Beach,* 206 U. S. 392,

408 (27 Sup. Ct. 712), involving a tax on notes, and rejected in the following language:

"Cases arising under collateral inheritance tax or succession acts have been cited as affording foundation for the right to tax as herein asserted. The foundation upon which such acts rest is different from that which exists where the assessment is levied upon property. The succession or inheritance tax is not a tax on property, as has been frequently held by this court (*Knowlton* v. *Moore,* 178 U. S. 41 [20 Sup. Ct. 747], and *Blackstone* v. *Miller,* 188 U. S. 189 [23 Sup. Ct. 277]), and therefore the decisions arising under such inheritance tax cases are not in point."

The title to this act does not admit of an enactment justifying the imposition of a specific tax for the privilege of recording a mortgage given by one nonresident to another, executed without the State, with bonds issued thereunder owned and held wholly by nonresidents of the State. The presence of the mortgage within the State for the sole purpose of being recorded does not make its *situs* here independent of the domicile of its nonresident holder. *Buck* v. *Beach,* *supra.* While the body of the enactment might, by considerable stretch, be held inclusive of a registration tax, the title to the act indicates no such thing. A mortgage registration privilege tax may be enacted without offending any constitutional provision, State or Federal.

In *Trustees, Executors & Securities Ins. Corp.* v. *Hooton,* 53 Okla. 530 (157 Pac. 293, L. R. A. 1916E, 602), a mortgage registry privilege tax case, it was said:

"The final objection to the act is that the State has no power to tax a mortgage, or the indebtedness it secures, owned by a nonresident of the State. It is sufficient answer to this objection to say that the tax in question is not a tax upon the mortgage, but, as already determined, is a tax upon the civil privilege of having such mortgage recorded, so as to be entitled

to the benefits and exemptions of the laws of this State." * * *

The Oklahoma statute is entitled:

"An act providing for exemption from *ad valorem* tax of mortgages on real estate and the indebtedness thereby secured; the payment of a registration tax when filing a mortgage for record," etc.

This denominated the tax a registry tax.

The order dismissing the case should be reversed and a trial granted, with costs against the county of Lenawee.

BIRD and FELLOWS, JJ., concurred with WIEST, J.

SHARPE, J.   The purpose of the act in question (Act No. 91, Pub. Acts 1911) and the causes which led to its enactment are set forth very clearly in *Union Trust Co.* v. *Detroit Common Council,* 170 Mich. 692, and *Economy Power Co.* v. *Daskam,* 174 Mich. 402.   In the former case, the fact that the mortgage interests of residents of the State under the prior law were "concealed from assessing officers by putting them in the names of nonresidents" was pointed out, and in the latter it was said that—

"Primarily the legislation was doubtless enacted to correct an alleged economic fallacy, and secondarily to place *foreign and domestic loaners* of money upon an equal footing."

The validity of this act or its enforcement, or both, has been before this court in the following cases: *Union Trust Co.* v. *Detroit Common Council, supra; Economy Power Co.* v. *Daskam, supra; Union Trust Co.* v. *Radford,* 176 Mich. 50; *Northern Assurance Co.* v. *Detroit Common Council,* 176 Mich. 80; *Bowen* v. *Moeller,* 171 Mich. 547; *Bank of Tustin* v. *Township of Burdell,* 184 Mich. 131; *Nelson* v. *Breitenwischer,* 194 Mich. 30; *Lake Erie Land Co.* v. *Chilinski,* 197

Mich. 214; *Rodenhouse* v. *DeGolia,* 198 Mich. 402; *Ross* v. *Stoll,* 199 Mich. 561; *Detroit Land Contract Co.* v. *Green,* 202 Mich. 464; *Marussa* v. *Temerowski,* 204 Mich. 274; *Shupert* v. *Ingham County Treasurer,* 214 Mich. 333; *Security Investment Co.* v. *Meister,* 214 Mich. 337; *Krell* v. *Cohen,* 214 Mich. 590.

In the *Trust Company Case,* the tax was spoken of as a "specific tax on such instruments" (real estate mortgages) ; in the *Radford Case,* as a "tax on account of the mortgage;" in the *Assurance Company Case,* it was said that the plaintiff had "paid a tax on mortgages;" in the *Tustin Case,* the act was said to apply to "specific tax-paid mortgages and contracts," and allusion was made to "securities of the kind mentioned;" in the *Bowen Case,* it was said to be "known as the mortgage tax law," and that its purpose was to "change the method of taxing mortgages;" in the *Chilinski Case,* the "enforcement of a land contract upon which the specific tax has not been paid" was referred to; in the *Rodenhouse Case,* it was claimed that the "mortgage tax * * * had not been paid;" in the *Ross Case,* it was spoken of as "a mortgage tax law;" in the *Krell Case,* the court referred to "the land contract tax imposed by the statute," and in the *Detroit Land Contract Company Case* the "mortgage tax" and the "amount of the mortgage tax" were referred to.

The act itself, independent of the title, clearly evidences an intent on the part of the legislature to impose the tax upon the security, if in the nature of a lien on real estate, or, in other words, upon the mortgage or land contract. (The italics in the provisions quoted from are ours.)

"SECTION 1. For the purposes of this act *all indebtedness secured by liens upon real property shall constitute that class of credit upon which this act imposes a specific tax.*

"SEC. 2. A tax of fifty cents for each one hundred dollars  *  *  *  *of the principal debt or obligation*  *  *  *  *secured*  *  *  *  is hereby imposed *on each such mortgage.*"

It also provides that as to certain *mortgages* no tax shall be imposed.

Section 3 provides that, if a mortgage be given as an indemnity, the tax shall be paid on the *"greatest amount for which it can  *  *  *  become security."*

Section 6 provides that the owner of any existing recorded mortgage may take advantage of the provisions of the act.

Section 8 provides that—

*"No mortgage or land contract,* which is subject to the tax imposed by this act shall be released, enforced, discharged of record or received in evidence  *  *  *  until the *tax imposed thereon* by this act shall have been paid."

That the word *"credits"* is intended to be used as synonymous with the word *"mortgages"* is apparent from the tenth section, which reads:

"That class of credits other than the mortgages given prior to January first, nineteen hundred twelve, upon which this act imposes a specific tax shall be exempt from further general taxes under the laws of this State."

By Act No. 139, Pub. Acts 1913 (1 Comp. Laws 1915, § 4278 *et seq.*), the holders of negotiable bonds secured by mortgage or trust deed recorded prior to January 1, 1912, may pay a specific tax of one-half of one per cent. upon the principal thereof and be relieved from further general taxes thereon.

The title to Act No. 142, Pub. Acts 1913 (1 Comp. Laws 1915, § 4282), reads as follows:

"An act to provide for the assessment and the collection of a specific tax upon secured debts other than debts secured or evidenced by mortgages and liens upon real property, and which mortgages and liens

are recorded in Michigan, and to repeal all acts and parts of acts in contravention thereto."

The provisions of this act are well expressed in the title. Its purpose was to permit the holders of certain "secured debts," for the taxation of which there was then no provision, to pay a specific tax and exempt them from further general taxes. In other words, to place them on the same footing as debts secured by real estate mortgages were placed by Act No. 91, Pub. Acts 1911.

In the administration of the act, the tax has been considered a tax on mortgages and land contracts, and many hundreds of thousands of dollars have been paid under it. We thus find that the act has been construed as a tax on such instruments by the legislative, judicial and administrative departments of the State government since its enactment in 1911. A different construction should not now be placed upon it by this court unless the language contained in it will admit of no other construction. *People* v. *Railroad Co.*, 145 Mich. 140; *Wright* v. *Banking Co.*, 216 U. S. 426 (30 Sup. Ct. 242); *Attorney General* v. *Lumber Co.*, 164 Mich. 625.

For the first time the claim is here made that the title is conclusive on this court that the tax is imposed on credits and therefore inapplicable to nonresidents of the State. The Constitution (Art. 5, § 21) provides that—

"No law shall embrace more than *one object, which shall be expressed in its title.*"

This provision was adopted in our first Constitution, and has remained in the several subsequent revisions without change. Its purpose and the effect to be given to it by the legislature have been many times discussed and passed upon by this court. It may be said at the outset that the provision is designed

to serve two purposes.    *First,* to prevent action by the legislature without receiving the concurrence therein of the requisite number of members by—

"bringing together into one bill subjects diverse in their nature, and having no necessary connection, with a view to combine in their favor the advocates of all."

—what is commonly spoken of as log-rolling in legislation—and also to prevent clauses being—

"inserted in bills of which the titles gave no intimation, and their passage secured through legislative bodies whose members were not generally aware of their intention and effect."    *People* v. *Mahaney,* 13 Mich. 481, 494.

and, *second,* to "challenge the attention" of those affected by the act to its provisions.    *People* v. *Wohlford,* 226 Mich. 166, 168.

The duty of this court in passing upon the question presented is well expressed in *Matter of Charles Hauck,* 70 Mich. 396.    At page 402, it is said:

"In testing acts of the legislature by this clause of the Constitution, we should not, on the one hand, be so hypercritical as to require every matter of detail to be stated in the title, nor, on the other hand, so liberal as to render the constitutional provisions nugatory.    But regard should be had to the letter and spirit of the Constitution, the evils it was intended to prevent, the rights it was intended to preserve, and, so regarding it, to test the act which is claimed to be repugnant to this clause candidly and justly."

In *People* v. *Bradley,* 36 Mich. 447, the question as to the sufficiency of the title to an act was discussed. It was said:

"If the word used by the legislature can in any of its various uses or meanings be considered appropriate or applicable, then we cannot say that they did not have a right to use it in that sense, even although we might be of opinion that a better and more appropriate one might have been chosen, and one that people generally would have better understood."

In *Bissell* v. *Heath*, 98 Mich. 472, 477, the following ⸲ from Cooley's Constitutional Limitations (6th Ed.), p. 175, was quoted approvingly:

"There has been a general disposition to construe the constitutional provision liberally, rather than to embarrass legislation by a construction whose strictness is unnecessary to the accomplishment of the beneficial purposes for which it has been adopted."

In 25 R. C. L., many pages (beginning at page 834) are devoted to the subject of titles to legislative acts. "The mischief sought to be remedied by the requirement" is discussed along the same line of treatment as in *People* v. *Mahaney, supra.* The fact that but few State constitutions contain the provision is alluded to. It is said that such provisions—

"should be reasonably and liberally construed, due regard being had to their object and purpose. They must receive a fair and reasonable construction which will repress the evil designed to be guarded against, but which, at the same time, will not render them oppressive or impracticable. * * *

"It is only a clear violation of the constitution which will justify the courts in overruling the legislative will. Every legislative act is presumed to be constitutional, and every intendment must be indulged by the courts in favor of its validity. The limitation must be liberally construed with a view to upholding legislation. * * *

"The title must be such at least as fairly to suggest or give a clew to the subject dealt with in the act; * * * The topics in the body of the act should be kindred in nature and have a legitimate and natural association with the subject of the title."

The courts should not hold the title insufficient "because, in its opinion, a better title might have been provided."

"The court should not resort to critical or technical construction of the language of the title. * * * If the words used in a title, taken in any sense or meaning they will reasonably bear, are sufficient to

cover the provisions of the act, the act will be sustained even though such meaning may not be the most common meaning of the words.   In doubtful cases, courts will consider long acquiescence in the constitutionality of an act in respect of its title, but this cannot control where there is no doubt but that the constitutional provision has been violated.   *   *   *   A very good test to apply is whether it is within the mischiefs intended to be remedied.   *   *   *   It is enough that the title is so phrased as to convey to the mind an indication of the subject or object to which it relates.   *   *   *   The office of the title is to apprise the legislators as to what the subject of legislation is, so as to put them on inquiry."

Many cases are cited in the footnote in support of the text.   See, also, *State* v. *Evans,* 154 Minn. 95 (191 N. W. 425, 27 A. L. R. 1165).

It is urged that the right to tax a mortgage owned by a nonresident is dependent upon the legislative declaration constituting the mortgage an interest in real property and fixing the *situs* thereof in the State where the land lies.   The first section of the act is declaratory of the purpose to include in the word "mortgage" every instrument by which "a lien is created over or imposed upon real property," and it is the indebtedness secured by such liens that the tax is imposed upon.   To say that a lien upon real estate is not an interest therein is narrowing the construction of these words and refining to an extent which the average legislator would fail to grasp.   In *Detroit Common Council* v. *Board of Assessors,* 91 Mich. 78 (16 L. R. A. 59), the holding in *State Tax on Foreign-Held Bonds,* 15 Wall. (U. S.) 300, referred to in *People* v. *Trust Co.,* 205 N. Y. 74 (98 N. E. 207), quoted from by Mr. Justice WIEST, was discussed at length.   Mr. Justice MONTGOMERY, who wrote for the court, referred to the claim made "that in Michigan a mortgage is a mere incident to the debt, and conveys no title to the land," and said:

"It is urged that, as this is so, the taxation of such mortgage interest amounts to a taxation of the debt, and brings the case within the case of *State Tax on Foreign-Held Bonds.*"

He further said:

"But while it is true that the mortgage is a mere security for the debt, yet it conveys a qualified property in the land; while it is not an estate which entitles the mortgagee to possession before foreclosure, it is nevertheless an estate or interest in lands, which is protected by our registration laws as fully as any other title or interest."

While the act there under consideration imposed the tax upon the mortgage interest in the lands, this provision was not under consideration when the language quoted above was used.

While more appropriate language might have been employed in the title to express the legislative intent as to the purpose and object of the enactment, we think a fair construction of that used clearly indicates that it was intended to impose a specific tax on real estate mortgages and land contracts. The act is said to be one "to provide for the assessment and the collection of a specific tax upon the *class of credits founded upon and evidenced by mortgages and liens upon real property.*" Clearly, this is but another way of expressing an intent to impose a specific tax upon such securities. If any person were enumerating his credits, he would list among them the notes or bonds secured by mortgages possessed by him. A note or bond, in itself, has no taxable value. The value is in the indebtedness of another, of which the note or bond is written evidence. No matter how described in the provision for taxation, the tax must be imposed upon the moneys owing to the taxpayer, of which the note or bond is the evidence and the mortgage the security. The act so provides. The tax is computed on the moneys for which the security is

pledged.    If the mortgage secures a bond issue, the tax need only be paid on the amount of the bonds issued or to be issued.    If it secures a note, and a payment has been made on it before it is recorded, the tax will be computed on the amount yet unpaid at the time of its record.    The mortgage conveys to the mortgagee an interest, equitable if you please, in the real estate described therein.    The tax imposed is, under the law, a tax upon such interest.    It is, however, none the less, a tax upon the monetary obligation of the mortgagor, evidenced by the note or bond, the payment of which is secured by the mortgage on his real estate.    It is, therefore, a tax upon that class of credits which a man possesses, for the payment of which he holds real estate security.    The requirement of payment at the time of recording the mortgage and the provision that the security may not be received in court as evidence unless the tax be paid is but a method or means provided by the legislature for enforcing payment.    These provisions give it the legal effect of a recording tax, and it is frequently spoken of as such.    It contains no other provision for enforcing payment.

It is apparent that there was no purpose to tax credits generally.    That class of credits only is proposed to be taxed which are "founded upon and evidenced by mortgages."    The words "founded upon" clearly indicate an intent to impose the tax upon the foundation upon which the credit or security rests, the mortgage.

In 1896 the legislature of the State of New York enacted a general tax law (chapter 908, Laws of 1896). Under its provisions, real estate mortgages were taxed as other personalty.    In 1905 (chapter 729), an act was passed, entitled, "An act to amend the tax law in relation to the taxation of debts secured by mortgages."    The first section of this act reads as follows:

"The words real property and real estate as used in this article, shall be understood to include *everything* a conveyance or mortgage of *which* can be *recorded* as a conveyance or *mortgage of real property* under the laws of this State."

In the first section of our act, a mortgage is thus defined:

"The word 'mortgage' as used herein shall include every mortgage or other instrument by which a lien is created over or imposed upon real property," etc.

In the New York act, a real estate mortgage is to be treated as real estate. In our act, a mortgage includes every instrument by which a lien on real estate is created. The purpose of both is to treat mortgages on real estate as real estate for the purpose of taxation. The purpose and effect of the New York act is thus stated in *People, ex rel. Eisman,* v. *Ronner,* 185 N. Y. 285, 288 (77 N. E. 1061):

"This act amended the general tax law of 1896, by imposing a tax upon all debts and obligations for the payment of money, which should thereafter be secured in whole, or in part, by mortgage of real property situated within this State."

It was further said:

"The scheme of this enactment was, clearly, to provide further revenue for the State treasury and, also, for the relief of the particular political divisions of the State. An annual tax was imposed upon mortgages," etc.

"The tax under this law is, in effect, upon the interest of the mortgagee in the real estate. The '*situs*' of all mortgages is fixed within this State by section 291, thus operating upon nonresidents, as well as residents, and their record evidences the liability to the tax. It was one way of reaching personal property through one of its visible forms and with the justice, or propriety, of the legislation the court has no concern."

Section 2 of our act fixes the *"situs"* as does the New York act.   The question there presented was, as here,—

"as to the right, as a condition of recording the mortgage, to exact from the relator the tax imposed by the law on the amount of the principal indebtedness."

The New York act was amended in 1906, chapter 532.   The title was, "An act to amend the tax law in relation to the taxation of mortgages of real property."   The provision imposing the tax was changed so as to read:

"A tax of fifty cents for each one hundred dollars and each remaining major fraction thereof of principal debt or obligation which is, or under any contingency may be secured by mortgage of real property situated within the State recorded on or after the first day of July, nineteen hundred and six, is hereby imposed on each such mortgage, and shall be collected and paid as provided in this article."

It will be noticed that this language is used in section 2 of our act.   In the New York act, the tax is paid to the recording officer; in ours, it is paid to the county treasurer and a certificate of the payment indorsed on the mortgage, without which it is not entitled to record.   Many of the other provisions are similarly worded.   The New York law was again amended in 1907, chapter 340.   The title reads "An act to amend the tax law, in relation to the recording tax on mortgages."   The language above quoted from chapter 532 remained unchanged.

Any ordinary person on reading the title to this act would understand that its purpose was to impose a tax on the interest created by a real estate mortgage in the land described in it.   Most lawyers would also do so.   This is apparent from the fact that although, as before stated, hundreds of thousands of dollars of taxes have been paid under conditions similar to that

228—Mich.—22.

here presented, no question of the sufficiency of the title has before been raised.   In my opinion, it sufficiently meets the requirements heretofore referred to.

The order appealed from is affirmed, with costs to appellees.

CLARK, C. J., and MCDONALD, MOORE, and STEERE, JJ., concurred with SHARPE, J.